**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VERITEXT CORP.** | **CIVIL ACTION NO. 16-13903** |
| Plaintiff; | |
| v. | **JUDGE** |
| **PAUL A. BONIN, VINCENT P. BORRELLO, JR., MILTON DONEGAN, JR., SUZETTE MAGEE, KIMYA M. HOLMES, JOHN H. ANDERSSEN, MAY F. DUNN, ELIZABETH C. METHVIN, and LAURA PUTNAM, in their official capacities as Members of the Louisiana Board of Examiners of Certified Court Reporters,** | **MAG. JUDGE** **SECTION** |
| Defendants. | |

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiff Veritext Corp. ("Veritext") files this Complaint against defendants Paul A. Bonin, Vincent P. Borrello, Jr., Milton Donegan, Jr., Suzette Magee, Kimya M. Holmes, John H. Anderssen, May F. Dunn, Elizabeth C. Methvin, and Laura Putnam, in their official capacities as members of the Louisiana Board of Examiners of Certified Court Reporters (the "Board") and also sues defendants Borrello, Donegan, Anderssen, Dunn, Magee, and Methvin in their individual capacities (the "Court Reporters") for unlawfully conspiring to insulate themselves and others from competition from Veritext and other regional and national court reporting firms.

## **INTRODUCTION**

1.

The freedom to contract—that is, "the right of the citizen to … earn his livelihood by any lawful calling … and for that purpose to enter into all contracts which may be proper, necessary and essential" to doing so—is a fundamental right that serves the public interest. *Washington v. Glucksberg*, 521 U.S. 702, 760 (1997). Contracts foster certainty, reduce transaction costs, and drive efficiencies which, in turn, promote competition and lower prices. In this lawsuit, Veritext challenges a state statute—La. Code Civ. Proc. art. 1434(A)(2)—which purports to prohibit court reporters in Louisiana from entering into long-term or volume-based contracts with frequent consumers of court reporting services. This restriction was not designed or intended to advance a legitimate state interest, but rather to protect the self-interest of court-reporters at the expense of consumers and the administration of justice by limiting competition and promoting artificially high prices for court reporter services in Louisiana. By providing "economic protection of the rulemakers' pockets" rather than "service of the public good," the statute violates the Commerce, Due Process, and Equal Protection Clauses of the United States Constitution and is unenforceable. *St. Joseph Abbey v. Castille*, 712 F.3d 215, 226–27 (5th Cir. 2013).

2.

The decisions, actions, agreements, and policies of the Board and Court Reporters to enforce La. Code Civ. Proc. art. 1434(A)(2) and insulate court reporters in Louisiana from competition also violate Section 1 of the Sherman Act, 15 U.S.C. § 1. As set forth below, the members of the Board, six of whom are practicing court reporters, are engaged in an illegal coordinated campaign to thwart competition by working to bar national providers of court-

reporting services from selling their services in Louisiana. Their unlawful actions have included, among other things, preventing and discouraging entry by national and regional court-reporting firms by sending notices threatening cease and desist proceedings, conducting public and nonpublic investigations, discouraging court reporters in Louisiana from working with firms outside Louisiana by targeting and harassing court reporters suspected of working with those firms, and issuing a rule to show cause against Veritext. The Court Reporters also have agreed with each other and invited other competing court reporters to engage in conduct designed to increase the rates for court-reporting services in Louisiana and to frustrate national and regional firms in their efforts to market their services in Louisiana. They have implemented this agreement by agreeing to cause the Board to take the actions described above and by regularly communicating with each other, the Board, and other court reporters about strategies for increasing rates and boycotting common competitors. The Court Reporters have pursued this conduct during meetings of the Board, but also outside the scope of their work for the Board utilizing e-mail communications, text messages, and telephones associated with their respective businesses.

3.

The Board and the Court Reporters have become so brazen about their agreements to rig the competitive playing field that they recently issued an agenda for the Board's Research and Planning Committee and Ad Hoc Committee to Promote Efficiency in Court Reporting which contained a clear statement and admission of their intent to increase court reporting rates in Louisiana at the expense of consumers. In this agenda, the Ad Hoc Committee is scheduled to meet to discuss "How to increase rates?" as part of an agenda item about the future of court reporting services in Louisiana. *See* Meeting Notice of Research and Planning Committee and

Ad Hoc Committee to Promote Efficiency in Court Reporting, attached as Exhibit 1. These discussions fall far outside the legislative mandate of the Board and represent the type of conduct the Antitrust Division of the Department of Justice ("DOJ") and Federal Trade Commission ("FTC") describe as "inherently suspect."  These actions represent per se unreasonable restraints of trade and were undertaken without active state supervision or procompetitive justification.

4.

Veritext has been injured and, unless the conduct is restrained, will continue to be injured in its business and property by this patently unconstitutional and illegal conduct by the Board and Court Reporters.  To remedy these serious violations of the Constitution and antitrust laws, Veritext seeks a declaration that La. Code Civ. Proc. art. 1434(A)(2) violates the Commerce, Due Process, and Equal Protection Clauses of the United States Constitution and is unenforceable; injunctive relief against the Board and the Court Reporters to prohibit any further effort to discourage or prevent Veritext from offering court reporting services in Louisiana; and a judgment awarding compensatory and treble damages, attorneys' fees, costs, and interest.

## JURISDICTION AND VENUE

5.

This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Veritext's claims arise under federal law, specifically, Article I, Section 8 of the United States Constitution; the Fourteenth Amendment of the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Clayton Act, 15 U.S.C. § 15(a), 26; and the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court also has jurisdiction under 28 U.S.C. § 1343.

6.

Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## **PLAINTIFF**

7.

Plaintiff Veritext Corp. is a Delaware corporation with its principal place of business in Livingston, New Jersey. Veritext provides court-reporting services to clients across the United States, including in Louisiana, in depositions, arbitrations, and other proceedings, and has been and will continue to be injured in its business and property by the conduct of the Board.

8.

Veritext offers negotiated rates for court-reporting services in Louisiana and across the country to insurance companies, large companies, government agencies, regulatory authorities, educational institutions, and other high volume users of such services.  To obtain these discounts, customers enter into nonexclusive preferred-provider agreements with Veritext in which they agree to utilize Veritext for all or some of their court reporting needs.  The economies of scale and other efficiencies arising from this commitment reduce the costs associated with supporting the customer and permit Veritext to pass on those savings to the customer.  They also permit Veritext to invest in data security, regulatory compliance, and other innovative products which, in turn, allows Veritext to offer services superior to most solo or small-firm court reporters.

9.

Preferred provider engagements are attractive to customers and procompetitive.  They result in lower prices and higher quality service.  They also permit customers to reduce their own costs by eliminating their need to spend time identifying, contracting with, and monitoring numerous court reporting services. For example, Veritext offers data security for all personal

health information and personally identifiable information, periodic reporting on litigation spending, consolidated billing, a repository for transcripts, and a central point of contact for scheduling and any other issues arising in connection with a user's court-reporting needs.

10.

Solo and small-firm court reporters in local areas who contract to provide services on behalf of Veritext also enjoy significant benefits.  Veritext provides these reporters with significant opportunities to increase their volume of work and reduce their administrative burden and expenses.  For example, in most jurisdictions, Veritext performs and incurs the associated cost of many of the "back office" tasks that the reporter otherwise will have to perform personally, including formatting, indexing, finalizing, and distributing the deposition (or other proceeding) transcript. Veritext also handles invoicing and collection with respect to the customer of the court-reporting services and ensures that the local court reporters who work for Veritext are paid timely even if the customer does not pay Veritext timely.  Veritext also incurs the risk of nonpayment.

11.

Preferred provider arrangements also support a significant public interest and the administration of justice by reducing the high cost of litigation, mitigating the significant administrative costs which law firms are frequently required to absorb by their clients, and ensuring that deposition transcripts comply not only with state laws governing court reporting services but also federal privacy requirements under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Gramm-Leach Bliley Act, each as amended.

## **DEFENDANTS**

12.

Defendants Paul A. Bonin, Vincent P. Borrello, Jr., Milton Donegan, Jr., Suzette Magee, Kimya M. Holmes, John H. Anderssen, May F. Dunn, Elizabeth C. Methvin, and Laura Putnam are all adult natural persons subject to this Court's personal jurisdiction and members of the Board. Messrs. Borrello, Donegan, and Anderssen and Ms. Dunn, Magee, and Methvin are certified court reporters and have a direct financial and economic interest in the decisions, rules, and policies of the Board with respect to its enforcement of La. Code Civ. Proc. art. 1434(A)(2).

13.

The Board is a regulatory body created "for the purpose of encouraging proficiency in the practice of shorthand reporting as a profession, promoting efficiency in court and general reporting, and … establishing a standard of competency for those persons engaged in it." La. R.S. 37:2551(A). The Board is charged with "aid[ing] in all matters pertaining to the advancement of the science of shorthand reporting," a task that includes "the development, implementation, and enforcement of continuing education requirements and such matters as concern th[e] relations [of certified shorthand reporters] with the public." *Id.* § 2553(A).

14.

To carry out these duties, the Board was given certain enforcement authorities. The Board can, without the need of instituting court proceedings, "suspend or revoke" the certified-court-reporter certificate that a person must hold to practice court reporting in Louisiana. *Id.* § 2557(A). It can also issue a cease-and-desist order to a person practicing as a court reporter without a license. *Id.* Alternatively, or to achieve sanctions other than suspension or revocation of a person's certified-court-reporter certificate or a cease-and-desist order to a person practicing without a certificate, the Board may "apply to any court of competent jurisdiction for a writ of injunction to restrain violation of this chapter." *Id.* § 2557(d).

15.

The Board is composed of and controlled by active market participants. Six of the nine members of the board are court reporters subject to the regulatory authority of the Board and who are engaged in the business of providing court-reporting services. These market participants are highly engaged in setting the agenda of the Board and its committees and in directing the Board's business. The structure of the Board, together with its operations, permit the market participants to exercise the decisionmaking authority of the Board. Yet no state supervisor reviews or has the power to veto or modify the decisions of the Board impacting or displacing competition for court-reporting services to ensure that they are in accordance with state policy.

## STATUTORY HISTORY

16.

In 1995, at the urging of market participants, the Louisiana Legislature passed House Bill 1534, amending Article 1434(A) of the Louisiana Code of Civil Procedure.

17.

As amended, Article 1434 prohibits court-reporting firms like Veritext from entering into long-term or volume based contracts with certain high volume users of court-reporting services. Specifically, Article 1434(A)(1) provides that "[a] deposition shall be taken before an officer authorized to administer oaths, who is not an employee or attorney of any of the parties or otherwise interested in the outcome of the case." Article 1434(A)(2) defines an "employee" as:

> a person who has a contractual relationship with a party litigant to provide shorthand reporting or other court reporting services and also includes a person employed part or full time under contract or otherwise by a person who has a contractual relationship with a party litigant to provide shorthand reporting or other court reporting services.

Within the court reporting industry, the conduct proscribed by Article 1434(A)(2) is commonly known as "contracting."

18.

The contracting prohibition in Article 1434 has no purpose other than to insulate court reporters in Louisiana from the competition and lower prices associated with contracting. Article 1434 creates several exemptions to the contracting prohibition which would not exist if Article 1434 were rationally related to a legitimate state purpose. First, federal, state, and local governments, as well as "parties in proper person," fall outside the definition of a "party litigant" under La. Code Civ. Proc. art. 1434(A)(2) and may engage in contracting. Second, Article 1434 does not purport to prohibit contracting with respect to depositions taken outside Louisiana even if the litigation is pending in Louisiana. *See* La. Code Civ. Proc. art. 1435 & La. R.S. 13:3823. Frequently, no regulations on contracting apply in these out-of-state depositions, because many states have found it unnecessary to regulate contracting and those that do generally only require that court reporters disclose if they are working under a contract.

19.

Nonetheless, in or about 2012, the Board publicly announced that it intended to begin enforcing Article 1434(A)(2). This announcement caused many certified court reporters to refuse assignments from national and regional firms like Veritext out of fear the Board might take disciplinary action against them. The Board further discouraged court reporters from working with court reporting service companies like Veritext by providing noncommittal, ambiguous responses to questions from court reporters about the application of Article 1434(A) to assignments made under court reporting service contracts and by publicly announcing expansive and unjustified interpretations of Article 1434(A). For example, in mid-2012, the Board announced that it interpreted Article 1434(A)(2) to apply to *any* contract with an insurance company even if that insurance company was not or could not be a party litigant under

Louisiana's direct-action statutes—a circumstance plainly outside the scope of Article 1434(A)(2). The Board took these actions pursuant to the collective agreement and affirmative vote of its members and with the specific intent and purpose of insulating Louisiana court reporters from competition.

20.

In 2014, in response to a public outcry from court reporters, the Louisiana Legislature passed a "safe-harbor" provision, La. R.S. 37:2556(D). Under § 2556(D), "[i]f a licensed Louisiana court reporter has no actual knowledge of a prohibited … contractual relationship between a party litigant and a court reporting firm, and if the reporter receives certification that the firm has no prohibited contractual … relationship with a party litigant, the reporter may accept employment from the firm," and will not be considered to be in violation of Article 1434.

21.

The Board subsequently adopted a rule to define the "certification" required under § 2556(D). Under La. Admin. Code Tit. 46, Part XXI, § 1303, "[u]pon request by a licensed Louisiana court reporter, a court reporting firm doing business in Louisiana shall provide a certification on forms adopted by the board and executed by affidavit from an authorized and knowledgeable officer of the firm, attesting that the firm has no" contractual relationship with a party litigant, as prohibited by Article 1434. La. Admin. Code Tit. 46, Part XXI, § 1303(C).

22.

Neither the safe-harbor statute nor its implementing regulation lifted the prohibition on contracting between court-reporting firms like Veritext, and court reporters and court-reporting firms in Louisiana remain in fear of the Board taking enforcement action against them, and are, thus, reluctant to do business with and reject business from Veritext.

23.

The ban against contracting for court reporter services bears no rational relationship to a legitimate interest the State of Louisiana could have in regulating the court-reporting industry. It does not advance any of the goals for which the Board was created: it plainly has nothing to do with the "proficiency," "efficiency," or "competency" of Louisiana court reporters. *See* La. R.S. 37:2551(A).  Nor does it serve any role in protecting the integrity of deposition transcripts. There are no reliable studies or reports to support the conclusion that transcripts produced by court reporters working under contracts are more likely to be false, inaccurate, or biased toward a party than are transcripts produced by court reporters not working under contracts.

24.

Moreover, the integrity of court reporters is already ensured by other statutory and regulatory provisions, including the provisions of La. Admin. Code Tit. 46, Part XXI, § 1103 requiring any court reporter who prepares a deposition transcript to read and certify its accuracy and the lack of any interest of the court reporter in the outcome of the case; the provision of La. R.S. 37:2557 permitting the Board to suspend or revoke a reporter's certificate on finding that the reporter engaged in "[f]raud, dishonesty, corruption, willful violation of duty, or gross incompetency in the practice of the profession," La. R.S. 37:2557(A)(1)(c); and other statutes that contemplate fines, imprisonment, and other criminal sanctions for persons who violate Louisiana's court-reporter regulations. *See* La. R.S. 37:2558–2559.  Moreover, Article 1445 of the Louisiana Code of Civil Procedure provides an additional safeguard against inaccurate or purposely biased deposition transcripts by giving deponents themselves the option to read, revise errors in, and sign their deposition transcripts. La. Code Civ. Proc. art. 1445.

25.

Article 1434 exists for one reason: to keep the rates charged by Louisiana court reporters artificially high and to stifle innovation in the court-reporting industry, thus depriving participants in Louisiana's court system of the substantial cost savings achieved by contracts between Veritext and other court-reporting firms and their clients.

26.

The anticompetitive purpose and effect of state laws like Article 1434 has been criticized by the United States Department of Justice ("DOJ"). In 1995, the NCRA considered adding to its Code of Professional Ethics a provision that would have required a court reporter to disclose all parties in a case "whether [the court reporter had] a contractual relationship with one of the parties." *See* Letter of Anne K. Bingaman (July 27, 1995), attached as Exhibit "2."

27.

NCRA asked DOJ for guidance as to whether this proposed rule would run afoul of the federal antitrust laws. *Id.* DOJ responded in a business-review letter, stating that

> [t]o avoid raising antitrust concerns, amendments to NCRA's Code of Ethics should observe the following guidelines: … [t]hey should not have the purpose or effect of discouraging court reporters from entering into long term contracts, contracts with volume discounts or other fee discount provisions, or contracts with any other innovative terms, or otherwise discouraging competition among court reporters.

*Id.* Because NCRA's proposed rule would not have this improper purpose or effect, DOJ indicated that it would not challenge the proposed provision if it were adopted. *Id.*

28.

Article 1434 does precisely what DOJ told NCRA it could not do if it wished to avoid raising concerns that it was acting to restrain competition—that is, it "discourag[es] court reporters from entering into long term contracts" by prohibiting those contracts outright.

29.

Unfortunately, Article 1434's anticompetitive purposes have been successful. The average market price of court reporting on a per-page basis in the State of Louisiana is higher than in many states where the cost of living is otherwise substantially higher than Louisiana's.

## UNLAWFUL ENFORCEMENT THREATS AGAINST VERITEXT

30.

In April 2016, the Board began an investigation of Veritext as a prelude to enforcement of Article 1434(A)(2) by sending a "Notice of Investigation" and "Rule to Show Cause" to Veritext. In the "Rule to Show Cause," the Board purported to "order[ Veritext] to show cause ... at the [Board] meeting to be held on the 29th day of April, 2016 ... why [it] should not be prevented from granting safe harbor affidavits in accordance with Louisiana Revised Statutes 46:1303." Copies of the Notice and Rule are attached as Exhibits 3 and 4.

31.

At the request of Veritext's counsel, the Board continued the Rule to Show Cause without date. On July 25, 2016, however, Veritext received another "Rule to Show Cause." This new "Rule to Show Cause" purported to order Veritext to appear at the Board meeting scheduled for August 19, 2016.  The Board has since continued the meeting without date due to the recent flooding in the Baton Rouge area.  Veritext, nevertheless, remains in jeopardy of prosecution.

32.

The Board has never brought formal charges against Veritext as contemplated by La. R.S. 37:2557(C), nor has it explained the statutory or factual basis for its threat to "prevent[ Veritext] from granting safe harbor affidavits," in compliance with §§ 955(B)(2), (3), or (4) of the Louisiana Administrative Procedure Act, La. R.S. 49:955(B)(2), (3), and (4).

33.

Enforcement of Article 1434(A)(2) has caused and will cause the rates for court-reporting services in Louisiana to remain artificially high and to rise further by insulating local court reporters from competition by Veritext and other national and regional court reporting firms. It also has caused and will continue to cause out-of-state effects on the economic relationships between national and regional court-reporting firms like Veritext and their clients by infringing on the performance of contracts negotiated and executed outside Louisiana and depriving Veritext and their clients of the economic benefits they expect to receive under those contracts.

## OTHER ANTICOMPETITIVE CONDUCT

34.

The Court Reporters have engaged in a systematic effort to unreasonably restrain competition by agreeing among themselves and others to work together to exclude regional and national court reporting firms from the market in Louisiana. Their unlawful actions have included utilizing their positions on the Board to cause the Board: (1) to investigate regional and national court reporting companies and court reporters in Louisiana who conduct business with regional and national court reporting company; (2) to issue notices of investigation, rules to show cause, and other verbal and written warnings and threats designed to discourage and prevent regional and national court reporting firms from conducting business in Louisiana; and (3) to establish committees, sub-committees, and working groups to discuss and develop strategies for raising the rates for court reporting services in Louisiana and creating artificial barriers to entry in order to insulate court reporters in Louisiana from competition.

35.

The Court Reporters have directed their actions against all regional and national court reporting firms not just Veritext.  The Court Reporters, for example, have caused the Board to initiate non-public investigations against unnamed court reporting firms.  In conducting these investigations, the Court Reporters and/or their agents have contacted court reporters in Louisiana whom they suspect of working with a national or regional court reporting firm to demand documentation establishing their compliance with the safe harbor provisions of La. R.S. 37:2556(D) and actively discourage those reporters from working for regional and national court reporting firms.  The Court Reporters also have caused the Board and its Chairman to make public statements and to issue minutes and other written materials indicating the Board's intention to enforce Article 1434(A)(2)'s contracting prohibition.  These statements have been directed to national and regional court reporting firms generally to deter new entry.

36.

For example, the agenda for the Board's Research and Planning Committee and Ad Hoc Committee to Promote Efficiency in Court Reporting indicates that it is scheduled to meet to discuss "How to increase rates?" to discourage a perceived trend of freelance court reporters leaving the profession. *See* Meeting Notice of Research and Planning Committee and Ad Hoc Committee to Promote Efficiency in Court Reporting, attached as Exhibit 1.  This meeting represents only one of many examples of the coordinated efforts among the Court Reporters to exchange, collect, and discuss rate information and common competitors for the purpose of increasing prices and deterring and delaying entry by national and regional court reporting firms.

37.

The Court Reporters have engaged in this anticompetitive conduct in and outside the meetings of the Board and regularly use social media, email accounts, text messages, and

telephones associated with their respective court reporting businesses to implement their plans and strategies to deter and delay new market entry.    This conduct has had the anticompetitive effect of raising court reporting rates in Louisiana which are higher than the rates charged in many other states with higher costs of living and has denied consumers access to the non-price advantages of working with national and regional court reporting firms.   Neither the Court Reporters nor the Board had any legitimate or procompetitive purpose for engaging in such conduct and, instead, have used the work of the Board as a pretext to engage in conduct clearly proscribed by federal antitrust laws.

## COUNT ONE

## COMMERCE CLAUSE

### 38.

Veritext adopts and incorporates by reference each of the allegations in the preceding Paragraphs as if fully set forth in this Paragraph.

### 39.

The Commerce Clause empowers Congress, and Congress alone, to regulate commerce "among the several States." U.S. Const. art. I, § 8.

### 40.

Because Congress alone may regulate commerce among the states, the Commerce Clause also, in its "negative" or "dormant" aspect, prohibits states from impeding interstate commerce by their own regulations. In other words, the dormant Commerce Clause prohibits states from engaging in economic protectionism. A state law violates the dormant Commerce Clause if it discriminates against interstate commerce by purpose or effect, or it imposes a burden on interstate commerce that is unreasonable in relation to its benefits.

### 41.

The sole purpose of Article 1434(A)(2) is economic protectionism, in that it was enacted with the intent of insulating court reporters in Louisiana from competition, maintaining artificially high prices for court reporting services in Louisiana, and preventing entry by national and regional court-reporting firms like Veritext. This protectionism harms Veritext and other national and regional firms that would like to offer court reporting services on a preferred provider basis without threat of prosecution or administrative sanctions. It harms consumers of court reporting services in Louisiana by denying them the benefits of lower prices and higher quality services. Finally, it harms solo and small-firm court reporters in Louisiana by denying them the opportunity to expand their businesses, reduce their administrative burdens and overhead expenses, and mitigate their risk of loss. The State had no legitimate purpose in enacting Article 1434(A)(2) and could have achieved any legitimate purpose through less restrictive means.

42.

Article 1434(A)(2) also unlawfully discriminates against interstate commerce. National and regional court-reporting firms like Veritext have been prohibited from negotiating and performing under contracts executed with their clients outside of Louisiana in proceedings pending before Louisiana courts, and clients who otherwise would have entered into a contract with a national or regional court-reporting firm have been reluctant to do so by regulations like Article 1434(A)(2), which prevent those contracts from being effective in Louisiana.

43.

These burdens on interstate commerce are excessive and unwarranted and not outweighed by any public benefits associated with Article 1434, which are nonexistent. Article 1434 does not increase the proficiency, efficiency, or competency of Louisiana court reporters

and has imposed substantial costs on consumers and the administration of justice. Similarly, Article 1434 does not serve any role in protecting the integrity of deposition transcripts. The integrity of court reporters is ensured by other statutory and regulatory provisions, which contemplate criminal sanctions for dishonest court reporters, as well as by the deponents' statutory option to read, revise errors in, and sign their deposition transcripts. The improper purposes behind Article 1434(A)(2)'s prohibition on contracting are further revealed by the exemption to the contracting provision for governmental entities, unrepresented parties, attorneys, law firms, groups of lawyers, nonparty insurance companies, and parties involved in out-of-state depositions, which all have the same incentive to attempt to influence a court reporter as would a private party represented by counsel in a deposition taken in Louisiana.

44.

Unless the Defendants are enjoined from applying Article 1434, which violates the Commerce Clause of the United States Constitution, Veritext will be deprived of a fundamental constitutional right, threatened with losses and injury to its business and property which cannot be compensated with money damages, and denied any remedy or recourse at law.

## COUNT TWO

## DUE PROCESS

45.

Veritext adopts by reference and incorporates each of the allegations in the preceding Paragraphs as if fully set forth in this Paragraph.

46.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state may "deprive any person of life, liberty, or property, without due process

of law." U.S. Const. amend. XIV, § 1. Under the Due Process Clause, any regulation of a lawful economic activity must be rationally related to a legitimate governmental purpose.

47.

The sole purpose of Article 1434(A)(2) is economic protectionism, in that it was enacted with the intent of insulating court reporters in Louisiana from competition, maintaining artificially high prices for court reporting services in Louisiana, and preventing entry by national and regional court-reporting firms like Veritext.  This protectionism harms Veritext and other national and regional firms which would like to offer court reporting services on a preferred provider basis without threat of prosecution or administrative sanctions.  It harms consumers of court reporting services in Louisiana by denying them the benefits of lower prices and higher quality services.  Finally, it harms solo and small-firm court reporters who would otherwise perform services for the national and regional firms in Louisiana by denying them the opportunity to expand their businesses, reduce their administrative burdens and overhead expenses, and mitigate their risk of loss.  The State had no legitimate purpose in enacting Article 1434(A)(2) and could have been achieved any legitimate purpose through less restrictive means.

48.

This economic protectionism represents an excessive and unwarranted deprivation of due process which is not outweighed by any public benefits associated with Article 1434, which are nonexistent. Article 1434 does not increase the proficiency, efficiency, or competency of Louisiana court reporters and has imposed substantial costs on consumers and the administration of justice. Similarly, Article 1434 does not serve any role in protecting the integrity of deposition transcripts. The integrity of court reporters is ensured by other statutory and regulatory provisions, which contemplate criminal sanctions for dishonest court reporters. The improper

purposes behind Article 1434(A)(2)'s prohibition on contracting are further revealed by the exemption to the contracting provision for governmental entities, unrepresented parties, attorneys, law firms, groups of lawyers, nonparty insurance companies, and parties involved in out-of-state depositions, which all have the same incentive to attempt to influence a court reporter as would a private party represented by counsel in a deposition taken in Louisiana.

49.

Unless Defendants are enjoined from enforcing Article 1434(A)(2), which violates the Due Process Clause of the United States Constitution, Veritext will be deprived of a fundamental constitutional right, threatened with losses and injury to its business and property which cannot be compensated with money damages, and denied any remedy or recourse at law.

## COUNT THREE

## **EQUAL PROTECTION**

50.

Veritext incorporates and adopts by reference each of the allegations in the preceding Paragraphs as if fully set forth in this Paragraph.

51.

The Equal Protection Clause of the Fourteenth Amendment provides that "no state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state law violates the Equal Protection Clause if it discriminates between different classes of persons without a rational basis for doing so.

52.

Article 1434(A)(2) discriminates between consumers of court-reporting services, and between certified reporters who are affiliated with court-reporting companies that engage in contracting with their clients, without a rational basis for doing so.

53.

For example, Article 1434(A)(2) discriminates between governmental litigants, unrepresented parties, attorneys, law firms, groups of attorneys, nonparty insurance companies, and parties involved in out-of-state depositions, on the one hand, and private parties, on the other, permitting contracting relationships between court-reporting firms and members of the former group while prohibiting such relationships between court-reporting firms and private entities. Allowing these classes of persons to contract with court reporters, while prohibiting represented, private litigants from doing so, is not rationally related to increasing the proficiency, efficiency, or competency of Louisiana court reporters or to protecting the integrity of deposition transcripts. The integrity of court reporters is ensured by other statutory and regulatory provisions, which contemplate fines, jail time, and other penalties for dishonest court reporters.

54.

Because there is no rational basis for drawing this or other distinctions drawn by Article 1434(A)(2), the Article violates the Equal Protection Clause.

55.

Unless the Defendants are enjoined from enforcing Article 1434(A)(2), which violates the Equal Protection Clause of the United States Constitution, Veritext will be deprived of a fundamental constitutional right, threatened with losses and injury to its business and property which cannot be compensated with money damages, and denied any remedy or recourse at law.

## COUNT FOUR

## <u>SHERMAN ACT VIOLATION</u>

### 56.

Veritext incorporates by reference each of the allegations in the preceding Paragraphs as if fully set forth in this Paragraph.

### 57.

The actions taken by the Board and the Court Reporters, including the decision to send a Notice of Investigation and Rules to Show Cause, the invitations to market participants to discuss and coordinate pricing and restrictions on the availability of court-reporting services, the efforts to discourage court reporters in Louisiana from conducting business with Veritext with threats of enforcement actions, and the adoption of rules and policies designed to insulate court reporters in Louisiana from competition, were all undertaken pursuant to the agreements and votes of the Board and Court Reporters at meetings of the Board and elsewhere and represent concerted action by private actors taken without active state supervision.  The conduct of the Board and Court Reporters further has and, unless restrained, will continue to unreasonably restrain trade in the market for court-reporting services in Louisiana by preventing, discouraging, and delaying entry by national and regional firms and has had and, unless restrained, will continue to have the effect of raising prices for court reporting services in Louisiana and denying consumers in Louisiana access to the often superior services offered by national and regional firms.

### 58.

The conduct outlined in this Complaint constitutes a naked per se restraint of trade or, alternatively, a restraint which fails quick look and rule of reason analysis because the anticompetitive effects of the scheme substantially outweigh any procompetitive effects or justifications that the Board and Court Reporters may offer and less restrictive practices were available to the Board and Court Reporters to achieve any such procompetitive effects.

59.

Veritext has been directly harmed in its business and property by this anticompetitive conduct because the Board and Court Reporters have substantially prevented Veritext from entering the market and have increased the rates charged by court reporters which Veritext engages to perform services in Louisiana.  Among other things, Veritext has incurred financial losses in the form of revenue that it would have otherwise earned from customers who, as a result of the anticompetitive conduct, chose not to utilize the services offered by Veritext; higher costs associated with the artificially high fees Veritext incurred in contracting for court-reporting services in Louisiana; and expenses Veritext incurred responding to the actions of the Board. Veritext is entitled to recover compensatory damages for these injuries and is further entitled to have these damages trebled and to recover its attorneys' fees, costs, and prejudgment and post-judgment interest under 15 U.S.C. § 15. Further, unless the conduct of the Board is restrained under 15 U.S.C. § 26, Veritext faces threatened loss and damage in that it will be excluded from the market entirely if the Board is permitted to continue to threaten enforcement of Article 1434(A)(2) against Veritext without cause or justification.

**PRAYER FOR RELIEF**

For the reasons above, Veritext prays for a trial by jury and relief as follows:

1.      For entry of a judgment in favor of Veritext and against the defendants declaring that Article 1434(A)(2) of the Louisiana Code of Civil Procedure violates the Commerce, Due

Process, and Equal Protection Clauses of the United States Constitution on its face and as applied to Louisiana-certified reporters whom Veritext may engage to perform contracting services;

2.      For entry of a permanent injunction against the Board prohibiting it from taking any action to enforce Article 1434(A)(2) against any certified reporter or Veritext and prohibiting the Board and Court Reporters from entering into, attempting to enter into, adhering to, participating in, maintaining, organizing, implementing, enforcing, inviting, encouraging, offering or soliciting any agreement or understanding, express or implied, to insulate themselves from competition from regional and national court reporting firms through a boycott, refusal to deal, the allocation of markets, customers, contracts, business opportunities, lines of commerce, or territories, or erecting other unlawful artificial barriers to entry;

3.      For an award of Veritext's costs and expenses of this action, together with reasonable attorneys' fees;

4.      For entry of a judgment in favor of Veritext and against the Board and Court Reporters for compensatory damages to be awarded in favor of Veritext in an amount to be proven at trial, to have these damages trebled, and for attorneys' fees, costs, and interest;

5.      For such additional and further relief, in law and equity, as the Court may deem just and proper.

Respectfully submitted,

*/s/ Robert B. Bieck, Jr.*

ROBERT B. BIECK, JR. (# 03066)
MARK A. CUNNINGHAM (#24063)
ALEXANDER N. BRECKINRIDGE, V (#21196)
JOSEPH C. DAVIS  (#35743)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
(504) 582-8000
(504) 589-8276 fax
rbieck@joneswalker.com
mcunningham@joneswalker.com
abreckinridge@joneswalker.com
jdavis@joneswalker.com

**Attorneys for Veritext Corp.**