**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VERITEXT CORP.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-13903** |
| **PAUL A. BONIN, ET AL.** | **SECTION "B"(2)** |

<u>**ORDER AND REASONS**</u>

## I. NATURE OF MOTION AND RELIEF SOUGHT

Before the court are Defendants' "Motion to Dismiss Amended Complaint for Declaratory Relief, Injunctive Relief, and Damages Under Federal Rule of Civil Procedure 12 (b)(6)" (Rec. Doc. 22), Plaintiff's "Opposition to Motion to Dismiss Amended Complaint for Declaratory Relief, Injunctive Relief, and Damages Under Federal Rule of Civil Procedure 12 (b)(6)" (Rec. Doc. 30) and Defendants' "Reply Brief in Support of Motion to Dismiss Amended Complaint Under Federal Rule of Civil Procedure 12 (b)(6) (Rec. Doc. 43); and Defendants' "Motion to Dismiss Claims for Damages Against Members CSR Board in their Official Capacities Under Rule of Federal Civil Procedure 12(b)(1) (Rec. Doc. 20), Plaintiff's "Opposition to Motion to Dismiss Claims for Damages Against Members of CSR Board in their Official Capacities Under Federal Rule of Civil Procedure 12 (b)(1)" (Rec. Doc. 31) and "Reply in Support of Motion to Dismiss Claims for Damages Against Members of the CSR Board in their Official Capacities Under Federal Rule of Civil Procedure 12(b)(1)" (Rec. Doc. 42). For the reasons set forth

below, **IT IS ORDERED** that the Defendants' Motion to Dismiss Pursuant to Federal Rule and 12(b)(6) is **GRANTED IN PART AND DENIED IN PART** and the Motion to Dismiss Pursuant to 12 (b)(1) is **DISMISSED AS MOOT**.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff, Veritext Corp., is a Delaware corporation that provides court-reporting services to clients in depositions, arbitrations and other legal proceedings in Louisiana and across the United States (Rec. Doc. 4). In the instant lawsuit the Plaintiff challenges a state statute, La. Code. Civ. Proc. Art. 1434(A)(2), which prevents court reporters from entering into long term or volume based contracts with frequent users of court reporting services (Rec. Doc. 4). The law creates two categories of court reporting firms: court reporting firms that regularly contract with party litigants and court reporting firms that do not regularly contract with party litigants. The law is concerned with potential bias issues relating to court reporting firms who hold contracts with lawyers and the judiciary and may feel a conflict of interest when creating work product (Rec. Doc. 4). Plaintiff claims that this law impermissibly prohibit its ability to enter into contracts in Louisiana (Rec. Doc. 4).

Plaintiff also alleges that it faces the threat of prosecution as the Louisiana Board of Examiners of Certified Shorthand Reporters began an investigation of it as a prelude to enforcement

of Article 1434 after it attempted to contract in violation of the law (Rec. Doc. 4). The Board has the authority to suspend or revoke the certified court reporter certificate that a person must hold to practice court reporting in Louisiana (Rec. Doc. 4). The Plaintiff currently has a pending hearing regarding suspending or revoking their certification that has been continued without date (Rec. Doc. 4). Plaintiff sues defendants Paul A. Bonin, Vincent P. Borrello, Jr., Milton Donegan, Jr., Suzette Magee, Kimya M. Holmes, John H. Andressen, May F. Dunn, Elizabeth C. Methvin, and Laura Putnam in their official capacities as members of the Louisiana Board of Examiners of Certified Shorthand Reporters (Rec. Doc. 4). Plaintiff also sues defendants Borrello, Donegan, Andressen, Dunn, Magee, and Methvin in their individual capacities (Rec. Doc. 4).

**III. FACTUAL AND LEGAL FINDINGS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. *See Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982)).

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190,

3

196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions "must be supported by factual allegations." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949.

Upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The

plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

1. **EQUAL PROTECTION CLAIM**

Under the Fourteenth Amendment to the Constitution it provides that no state shall "deny to any person within its jurisdiction the equal protection of the law." The Supreme Court has further elaborated that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Furthermore, the Supreme Court has explained, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (internal citations and quotations omitted). In the current controversy Article 1434 creates a legislative classification that distinguishes between court reporting firms that contract with party litigants and court reporting firms that do not. Given that this distinction does not implicate fundamental rights or inherently suspect

5

characteristics, the rational basis test is appropriate. The Supreme Court has explained that "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity" under the rational basis test. *Heller v. Doe*, 509 U.S. 312, 319 (1993). The *Heller* court further explained that a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification" and that "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (internal quotations and citations omitted). This is an untenable burden for the Plaintiff in this case.

The Defendants have argued that the classifications should pass the rational basis test because they "(1) ensure that court reporters provide comparable service to all participants in a deposition and treat all parties fairly (2) ensure that court reporters maintain the confidentiality of sensitive information contained in depositions; (3) to protect the integrity of the record; (4) to maintain the court reports integrity; (4) to avoid any appearance of impropriety or bias on the court reporter's behalf." (Rec. Doc. 22-1). These are all rationales that survive the relevant equal protection analysis. The Plaintiff argue that in the Fifth Circuit laws that are protectionist or create an

economic preference cannot pass constitutional scrutiny under an equal protection analysis. *St. Joseph Abbey v. Castille*, 712 F.3d 215, 221 (5th Cir. 2013). However, this Court finds this case to be inapposite. The law in question may have economic implications for court reporting firms but the primary motivation is related to the professional integrity of the court reporting industry. Article 1434 may have collateral consequences on court reporting businesses but it's primary effect is one ensure that the court reporters in the state of Louisiana do not face professionally compromising conflicts of interests. This law would pass a constitutional analysis under the Equal Protection Clause unless the Plaintiff could negate every potential rationale for Article 1434. Failing that, Plaintiff's claims under the Equal Protection Clause should be dismissed for failure to state a claim.

2. **DUE PROCESS CLAUSE CLAIM**

Under the Due Process Clause of the Fourteenth Amendment there are two potential avenues for a violation, procedural due process and substantive due process. *Jones v. La. Bd. of Supervisors of Univ. of La. Sys.*, Case No. 14-31255, 2015 U.S. App. LEXIS 21471, at*10 (5th Cir. 2015); *Conroe Creosoting Co. v. Montgomery County*, 249 F.3d 337, 340-341 (5th Cir. 2001).

The Amended Complaint does not specify the nature of the alleged due process violation (Rec. Doc. 4). However, as Plaintiff points out, any procedural due process claim would be premature

7

because there was no hearing on the Rule to Show Cause. Therefore this Court will analyze whether there was a substantive due process violation.

In the Fifth Circuit, "substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights." *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 249 (5th Cir. 2000). Constitutionally protected rights in this context are fundamental rights such as the right to marriage, contraception and marital privacy. *Wash. v. Glucksberg*, 521 U.S. 702, 719-720 (1997). This case does not involve such purported rights and therefore a substantive due process analysis is not appropriate. The Due Process claim should be dismissed.

3. **DORMANT COMMERCE CLAUSE CLAIM**

The constitution gives congress the authority to regulate commerce. U.S. CONST., art. I, § 8, cl. 3. The dormant Commerce Clause doctrine arises from the inversion of this principle, in other words, "the negative aspect of Commerce Clause prohibits economic protectionism -- that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992) (internal quotations and citations omitted). The Supreme Court further explained, "when a state statute clearly discriminates against interstate commerce, it will be struck down...unless the

discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Wyoming v. Oklahoma*, 502 U.S. at 454. In this context discrimination is defined as "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). Furthermore, "where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970). This Court finds that this claim should also be dismissed because the complaint does not allege that Act 1434 discriminates against interstate commerce through treating in-state and out of state corporations differently. Louisiana Court reporting firms and the Plaintiff are subject to the same requirements and in the Amended Complaint the Plaintiff does not allege otherwise.

Furthermore, even if there is incidental discrimination against out of state court reporting firms, there is still not a valid claim because the law has a justification that is unrelated to economic protectionism. There is a legitimate state interest in ensuring the reliability and ethical quality of its court reporter's work product. Article 1434 aids the state of Louisiana

achieve its goal and the Plaintiff in its complaint does not allege sufficient facts to demonstrate that this burden on interstate commerce is "clearly excessive in relation to the putative local benefits." Plaintiff quotes in its Opposition various manners in which it believes that Article 1434 raise a dormant Commerce Clause claim. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Consequently, Plaintiff's dormant Commerce Clause claims should be dismissed.

4. **SHERMAN ACT CLAIM**

Under Section 1 of the Sherman Act, "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C.A. § 1. In order to establish a Section 1 violation, "plaintiffs must show that the defendants (1) engaged in a conspiracy (2) that produced some anticompetitive effect (3) in the relevant market." *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F. 3d 321, 327 (5th Cir. 2014). Additionally, in order to seek relief for anti-competitive conduct under the Sherman Act, the plaintiff must show both an actual injury and an "antitrust injury"—i.e., the plaintiff must show that "the defendants' activities caused an injury to competition." *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F. 3d 314, 318-19 (5th Cir. 2009); *Doctor's Hosp. of Jefferson,*

*Inc. v. Se. Med. Alliance*, 123 F. 3d 301, 307 (5th Cir. 1997). Nonetheless, anti-competitive conduct by a state is generally immune from federal antitrust law. As the Supreme Court has held "nothing in the language of the Sherman Act or in its history . . . suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Parker v. Brown*, 317 U.S. 341, 350-51 (1943). However, this Court finds that the Plaintiff's Sherman Act claims survives the Defendants' Motion to Dismiss for Failure to State a Claims.

First, the Amended Complaint alleges sufficient facts for a violation of the Sherman Act. The Amended Complaint satisfies the first element of a Sherman Act claim through alleging that the Board acted in concert and that the Board Member Court Reporters conspired among themselves to take actions independently of the Board in their efforts to exclude national competition and raise rates for court reporting services. (Rec. Doc. 4 ¶¶ 2-3, 34-37). Specifically, the Amended Complaint alleges that the Board Member Court Reporters met to "exchange, collect, and discuss rate information and common competitors for the purpose of increasing prices and deterring and delaying entry by national and regional court reporting firms" and points to a specific example of such a meeting where "How to increase rates?" was on the agenda (Rec. Doc. 4 ¶ 36.).

Second, the Amended Complaint alleges another element on the Sherman Act through detailing actions that would satisfy a factual basis for unreasonable restraint. The Amended Complaint alleges that the Court Reporter Board has established committees and working groups "to discuss and develop strategies for raising the rates for court reporting services in Louisiana and creating artificial barriers to entry in order to insulate court reporters in Louisiana from competition." (Rec. Doc.4 ¶¶ 34-37.). These actions sufficiently alleged unreasonable restraint.

Finally, the complaint sufficiently alleges harm to competition, the final element of a Sherman act claim. In the Amended Complaint the Plaintiff alleges that Article 1434 "has had the anticompetitive effect of raising court reporting rates in Louisiana which are higher than the rates charged in many other states with higher costs of living and has denied consumers access to the non-price advantages of working with national and regional court reporting firms" (Rec. Doc.4 ¶ 37.).

In addition, Defendants argue that the Sherman Act claim should be dismissed because they are entitled to state action immunity. Under the test articulated by the Supreme Court, regulatory boards and their members are not entitled to immunity for violations of the Sherman Act unless they are acting pursuant to a clearly articulated state policy and their anticompetitive actions are subject to active supervision. *N.C. State Bd. of Dental*

*Exam'rs v. FTC*, 135 S. Ct. 1101, 1110, (2015). Defendants argue that the Fifth Circuit has found that the active supervision requirement for state action immunity has been met in similar factual scenarios. *Earles v. State Bd. of Certified Pub. Accountants*, 139 F.3d 1033, 1041 (5th Cir. 1998). However, this Court finds the Fifth Circuit case to be inapposite given that the Court in that case found that the "Board is functionally similar to a municipality and is also exempted from the active-supervision prong." *Id.* The board in that case did not meet the active supervision prong but was exempt from it because of its resemblance to a municipality.

Defendants further argue that even if active supervision is required, the standard in this case has been met because the Louisiana legislature has the power to intervene and overturn any anticompetitive decisions of the board. However, in *Goldfarb*, the Virginia Supreme Court had the power to intervene in decisions regarding a mandatory minimum fee schedule set by the state Bar Association. *Goldfarb v. Va. State Bar,* 95 S. Ct. 2004, 2016 (1975). Nonetheless, in a lawsuit related to the antitrust implications of the minimum fee schedule, the United States Supreme Court did not find this ability to intervene to constitute active supervision *Id.* Without being able to establish active supervision the Defendants cannot claim immunity. In addition, Plaintiff has alleged sufficient facts in its complaint that the board's actions

13

do not resemble a municipality under active supervision but instead represent an unbridled regulatory environment (Rec. Doc. 4). Consequently, the Plaintiff's claims are legally viable and the Amended Complaint has alleged facts that are sufficient to defeat the Defendants' Motion to Dismiss the Sherman Act claim.

5. **QUALIFIED IMMUNITY**

The Defendants raise the same arguments for their damages claim that they do for the state action immunity claim. Given that based on the facts alleged in the complaint, the Plaintiff has alleged legally sufficient causes of action, these claims should also not be dismissed. Furthermore, qualified immunity is an affirmative defense and the Board Members must both plead and establish their entitlement to that defense. *Gomez v. Toledo*, 100 S. Ct. 1920, 1923(1980). Furthermore, in order to receive qualified immunity the Board of Court Reporters bear the burden of establishing that the challenged conduct fell within their official duties or discretionary authority. *Garris v. Rowland*, 678 F.2d 1264, 1271 (5th Cir. 1982). The Defendants have not met this burden or argued this point of law. Based on the face of the Amended Complaint and the applicable law this Court does not find that the Defendants are entitled to qualified immunity.

IV. **Defendants' Motion to Dismiss Claims for Damages Against Members CSR Board in their Official Capacities Under Rule of Civil Procedure 12(b)(1)**

The Defendant filed a motion to dismiss claims for damages against the members of the CSR Board in their official capacities under rule of civil procedure 12(b)(1). Plaintiff argues that this motion to dismiss is moot because Plaintiff has not brought claims for damages against members of the board in their official capacities. Given the facts alleged in the complaint, the Court finds this contention to be compelling and the Defendants' motion to dismiss should be dismissed as moot in view of Plaintiff's above noted judicial admission.

New Orleans, Louisiana, this 10th day of April 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE