UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **VERITEXT CORPORATION** | * | **CIVIL ACTION NO. 16-13903** |
| | | c/w 17-09877 |
| Plaintiff | | |
| | * | **SECTION B; DIVISION 2** |
| **VERSUS** | * | **JUDGE IVAN L.R. LEMELLE** |
| **JOHN J. LEE, ET AL** | | **JUDGE MAGISTRATE JOSEPH C. WILKINSON** |
| Defendants | | |

*Filing Applies To Civil Action No. 17-09877 Only*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN REPLY TO PLAINTIFF ESQUIRE
DEPOSITION SOLUTIONS' OPPOSITION TO MOTION TO DISMISS COMPLAINT**

MAY IT PLEASE THE COURT:

Defendants JOHN J. LEE, JR., KIMYA H. HOLMES, LAURA PUTNAM, JOHN H. ANDRESSEN, VINCENT P. BORRELLO, JR., MILTON DONEGAN, JR., SUZETTE MAGEE, MAY F. DUNN, and ELIZABETH C. METHVIN, in their official capacities as members of the Louisiana Board of Examiners of Certified Shorthand Reporters, and JOHN H. ANDRESSEN, VINCENT P. BORRELLO, JR., MILTON DONEGAN, JR., SUZETTE MAGEE, MAY F. DUNN, and ELIZABETH C. METHVIN, in their individual capacities (collectively, "these Defendants" or "the Board Members") respectfully submit this Memorandum in Reply to the Opposition to Motion to Dismiss Complaint filed by Plaintiff, ESQUIRE DEPOSITION SOLUTIONS, LLC ("Esquire").

**I.     Correction of The Plaintiff's Misstatement of the Holding of The Fifth Circuit Court of Appeals in *Veritext v. Bonin*.**

In its Opposition, Esquire omitted the fact that the Fifth Circuit Court of Appeals

affirmed this Court's dismissal of Esquire's equal protection claim in V*eritext vs. Bonin* and that this Court is bound by that ruling in this case. Esquire states that in *Veritext*, the Fifth Circuit "affirmed the dismissal of the due process and dormant commerce clause claims" and that "[T]he parties have agreed that the Fifth Circuit decision is binding in both cases and to not re-litigate the antitrust, due process, and dormant commerce clause issues decided by the Fifth Circuit." Opposition [Rec. Doc. 96] at 2. In fact, the Fifth Circuit also affirmed this Court's dismissal of Veritext's equal protection claim. Opinion [Rec. Doc. 44] at 3. That ruling is equally binding in both cases, and, therefore, should not be re-litigated now.

II.   **Article 1434 Is Not Vague.[1]**

Esquire argues that Article 1434 is unconstitutionally vague because:

> [It] provides no guidance about whether: "(1) the statute prohibits all agreements between court reporters and party litigants; (2) the statute requires party litigants to engage court reporters through their attorneys; (3) the statute permits an agreement for a single engagement but prohibits long term agreements; (4) the statute prohibits court reporters from offering volume-based price discounts or service concessions to frequent customers; (5) the statute prohibits referrals from court reporting firms; or (6) the statute prohibits a combination of the above or something else entirely."

Opposition [Doc. Rec. 96] at 20.

As to Esquire's #1 argument, Article 1434 provides explicit guidance, articulating a two-part prohibition on agreements between Louisiana court reporters and party litigants that is unambiguous:

---

[1]   At the outset, the Board Members respectfully submit that this Court should decide the vagueness issue as a matter of law. *U.S. v. Garth*, 773 F.2d 1469, 1479 fn. 10 (5th Cir. 1985).

 Subsection (A)(1) is stated in the affirmative, but its prohibition is nonetheless quite clear: "A deposition shall be taken before an officer . . ., who is *not an employee* . . . of any of the parties" (emphasis added).

 Subsection (A)(2) unambiguously answers the question that seems so troubling to Esquire (Who is "an employee"?) by providing this definition of an employee—"a person who has a *contractual relationship with a party litigant to provide shorthand reporting or other court reporting services*" (emphasis added)."

In Article 1434(A)(1) and (2), the Louisiana Legislature could not have been clearer in prohibiting contractual relationships between a court reporter and a party litigant.

 The Fifth Circuit Court of Appeals concurred, ruling, "[Article 1434's] ban on private court reporting arrangements is clearly articulated, as Article 1434 *does indeed bar contracts between private court reporting services and private litigants*." Opinion [Rec. Doc. 82-1] at 5. (Emphasis and bracketed portion added.)

 The recent Supreme Court case cited by Esquire lends further weight to the legitimacy of Article 1434, when it requires that people have "fair notice" of a law's meaning and that "Congress [for our purposes, the Louisiana Legislature], rather than the executive or judicial branch, define what conduct is sanctionable and what is not." *Sessions v. Dimaya*, 136 S.Ct. 1204, 1212 (2018). Clearly, Louisiana's court reporters and Esquire have had fair notice about the meaning of Article 1434 and its prohibition on contractual relationships between a court reporter and a party litigant.  Additionally, as per *Dimaya* at 1212, the Supreme Court "has stated that '[t]he degree of vagueness that the Constitution [allows] depends in part on the nature of the enactment'" and has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."  In Article

3

1434, we have a civil provision directly from the Louisiana Legislature that has been interpreted by the U.S. Fifth Circuit Court of Appeals. Weigh the specificity of its interpretation against Esquire's assertion that Article 1434 provides "no guidance" on whether "all agreements between court reporters and party litigants" are prohibited, and Esquire's argument #1 will be found wanting.

Esquire's fundamental problem with Article 1434 does not flow from its prohibition on *direct* contractual relationships between court reporters and parties litigants. Rather, Esquire seeks to overturn the second prohibition found in Article 1434(A)(2)—the *indirect* contractual relationship that arises when a court reporter is employed "by a person who has a contractual relationship with a party litigant to provide shorthand reporting or other court reporting services." This indirect relationship *through an intermediary* is equally prohibited by Article 1434—and the prohibition is equally unambiguous. Esquire unleashes a barrage of arguments and quotes selectively from Article 1434 to buttress its claims.

The short answer to argument #2 is that Esquire is neither a party litigant nor an attorney, and its hypothetical should be left to argument by the parties allegedly impacted.[2] Going further, nothing in Article 1434 requires a party litigant to engage court reporters through an attorney, although as a practical matter, attorneys do often hire the court reporter.

Esquire's #3 and #4 arguments are based on two faulty premises wholly created and repeatedly propounded by Esquire: that Article 1434 allows an agreement for a single engagement but then prohibits long-term agreements; and that Article 1434 prohibits court reporters from offering volume-based price discounts or service concessions to frequent customers. Neither the CSR Board nor Article 1434 prohibit long-term contracts or volume-

---

[2] *United States v. Thomas,* 877 F.3d 591, 599 (5th Cir. 2017).

based price discounts, though Esquire continually advances these faulty propositions. Indeed, we wholeheartedly agree with Esquire's assertion at page 21 of its Opposition that "the plain text of Article 1434 does not ban volume-based discounts." We likewise agree with Esquire's assertion at pages 20-21 that "nothing in the [CSR Board's] ethical rules for court reporters can be reasonably interpreted to prohibit volume-based discounts." (Bracketed material added.) After closely examining what Esquire calls the "only ethical rules potentially applicable to pricing," Esquire concludes that "They say nothing about volume discounts." Again, we agree: By its own assertions in the Opposition Memorandum, Esquire's two faulty propositions about "long-term contracts" and "volume-based discounts" are nowhere articulated in CSR Board statutes or rules or in the terminology of Article 1434. Article 1434 does prohibit *all* contracts between a Louisiana court reporter and a party litigant, as shown above in our response to Esquire's #1 argument, but that clear and unambiguous prohibition applies regardless of whether the contracts are short-term or long-term, whether they include a volume-based discount or not.

As to Esquire's argument #5, Article 1434 does not prohibit referrals from court reporting firms—unless of course the referral is to a party litigant; and its "combination" argument #6 requires no response.

Article 1434 is not vague. All contractual relationships (whether direct or indirect) between the reporter and a party litigant are prohibited in subsection (A)(1), and subsection (A)(2) gives two specific examples of prohibited direct and indirect contractual relationships. What could be clearer?

### III. Esquire's Argument About the "Overbreadth" of Article 1434 Is Ill-Founded and Borders on Frivolous.

5

At page 21, Esquire criticizes "the overbreadth of a statute which purports to render all contracts with court reporters illegal." If there's "overbreadth" to be found here, it's in Esquire's representation that Article 1434 "purports to render all contracts with court reporters illegal." Article 1434 does not purport to render all contracts with court reporters illegal, only those with a party litigant; to argue otherwise, as Esquire does, would produce an absurd result.[3]

But Esquire does go further into absurdity at page 21 by suggesting that Article 1434 "seems to foreclose an attorney or other representative from employing a court reporter," then selectively quotes the contractual prohibition as follows: "part or full time under contract or otherwise by a person who has a contractual relationship with a party litigant." Esquire's argument is misguided—and misleading.

Compare the truncated quote above with Article 1434's actual language prohibiting reporters from being "employed part or full time under contract or otherwise by a person who has a contractual relationship with a party litigant *to provide shorthand reporting or other court reporting services*." (Emphasis added.) The limiting language in italics, wholly omitted by Esquire, makes plain that the prohibition applies not to "all contracts" (as Esquire asserts) but only to contracts "to provide shorthand reporting or other court reporting services." An attorney may have a contractual relationship with a party litigant, but the lawyer's contract is *not* to provide shorthand or court reporting services. The attorney is hired to provide legal services; the attorney may in turn may hire court reporters to provide deposition services. All of this is permissible under Article 1434.

---

[3] Esquire's interpretation of Article 1434 to "render all contracts with court reporters illegal" is an absurd result that this Court must avoid. *Cross v. Monett R-I Board of Education,* 431 F.3d 606, 610 (8th Cir. 2005).

Esquire's argument that Article 1434 prohibits "all contracts with court reporters" is overbroad, bordering on frivolous.

IV. **Esquire's Argument That Article 1434 Does Not Apply to Contracts Between Esquire and Louisiana Court Reporters Is Frivolous.**

At page 22 of its Opposition, Esquire argues:

> […] Firms like Esquire and Veritext do not directly employ court reporters in Louisiana, but rather contract with local reporters to provide such services as "back office" services and invoicing, among other things.  The statute seemingly does not include contracts Esquire has with local reporters to provide these services, or contracts it may have with insurance companies, yet the Board seems to believe the Article curtails this.

Esquire's disingenuous characterization of itself simply as a provider of services to local court reporters and therefore not subject to Article 1434 is diametrically opposed to Esquire's previous characterizations of its business model.  At page 4 of its Opposition, Esquire states, while citing to its Complaint:

> Esquire provides court reporting service to clients in depositions, arbitrations, and other proceedings throughout the United States, including Louisiana.  Solo and small-firm court reporters contract with Esquire to increase their volume of work and reduce their administrative burdens.  Compl. ¶ 23.  Esquire pays affiliated court reporters a fee for their services, performs back office tasks, and assumes risk of nonpayment.  *Id.* ¶ 24.  This arrangement reduces the costs and financial risk to court reporters.  *Id.*  Consumers (typically insurance companies, large companies, government agencies, regulatory authorities, educational institutions, and other high volume users of transcription services) also benefit from the arrangement through price discounts and reduced information costs associated with using a single service.  *Id.* ¶ 21.

This description of Esquire's business model confirms that Esquire may well be "a person who has a contractual relationship with a party litigant to provide shorthand reporting or other court reporting services" within the meaning of Article 1434.  Therefore, far from being a mere

7

provider of services to local court reporters, Esquire will by its own allegations sometimes fall within the terms of Article 1434.[4]  Esquire errs in arguing otherwise.

## V.  CONCLUSION

For the foregoing reasons, the CSR Board respectfully requests that the Court grant the pending Motion and dismiss Esquire's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted:

| | |
|---|---|
| JAMES M. GARNER (# 19589)<br>DAVID A. MARCELLO (# 09250<br>JOSHUA S. FORCE (# 21975)<br>BRANDON W. KEAY (# 36528)<br>**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**<br>909 Poydras Street, 28th Floor<br>New Orleans, Louisiana  70112-1033<br>Telephone:     (504) 299-2100<br>Facsimile:     (504) 299-2300<br>E-Mail:  jgarner@shergarner.com<br>         dmarcello@shergarner.com<br>         jforce@shergarner.com<br>         bkeay@shergarner.com | **JEFF LANDRY**<br>**ATTORNEY GENERAL**<br><br>_____/s/ J. Elliott Baker_____<br><br>By:  J. ELLIOTT BAKER (# 18774)  T.A.<br>       Special Assistant Attorney General<br><br>321 N. Vermont Street, Suite 208<br>Covington, Louisiana 70433<br>Telephone:     985-867-9068<br>Facsimile:     985-867-9069<br>E-Mail:  jebaker102@bellsouth.net |
| Attorneys for Defendants<br>JOHN J. LEE, JR., KIMYA H. HOLMES, LAURA PUTNAM, JOHN H. ANDRESSEN, VINCENT P. BORRELLO, JR., MILTON DONEGAN, JR., SUZETTE MAGEE, MAY F. DUNN, and ELIZABETH C. METHVIN. | Attorney for Defendants<br>JOHN J. LEE, JR., KIMYA H. HOLMES, LAURA PUTNAM, JOHN H. ANDRESSEN, VINCENT P. BORRELLO, JR., MILTON DONEGAN, JR., SUZETTE MAGEE, MAY F. DUNN, and ELIZABETH C. METHVIN. |

---

[4]  Of course, if Esquire's client is not a party litigant, Article 1434 does not apply.