**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**VERITEXT CORP.**                                          **CIVIL ACTION**

**VERSUS**                                                  **NO. 16-13903 C/W
                                                               17-9877
                                                            REFERS TO: 17-9877**

**PAUL A. BONIN, ET AL.**                                   **SECTION: "B"(2)**

## ORDER & REASONS

### I.  NATURE OF MOTION AND RELIEF SOUGHT

Before the Court are: (1) defendant Louisiana Board of Examiners of Certified Shorthand Reporters' [1] ("CSR Board") "Motion to Dismiss Complaint Under Federal Rule of Civil Procedure 12(b)(6)" (Rec. Doc. 92); (2) defendant Louisiana Court Reporter's Association's ("LCRA") "Motion to Dismiss Complaint Under Federal Rule of Civil Procedure 12(b)(6)" (Rec. Doc. 93); (3) defendant CSR Board's "Supplemental Memorandum in Support of Motion to Dismiss Complaint Under Federal Rule of Civil Procedure 12(b)(6)" (Rec. Doc. 94); (4) defendant LCRA's "Supplemental Memorandum in Support of Motion to Dismiss Complaint Under Federal Rule of Civil Procedure 12(b)(6)" (Rec. Doc. 95)[2]; (5) plaintiff Esquire

---

[1] Paul A. Bonin, Vincent P. Borello, Jr., Milton Donnegan, John H. Andressen, Mary F. Dunn. Suzette Magee, Kimya M. Holmes, Elizabeth C. Methvin, and Laura Putnam in their official capacities as members of the Louisiana Board of Examiners of Certified Shorthand Reporters' (collectively "The CSR Board") and John H. Andressen, Vincent P. Borello, Jr., Milton Donegan, Jr., Suzette Magee, May F. Dunn, and Elizabeth C. Methvin, in their individual capacities as members of the CSR Board.
[2] Defendant LCRA has filed Rec. Doc. 95 as a "substitute" for their motion to dismiss (Rec. Doc. 93) to focus on the remaining issues not decided by the Fifth

Deposition Solutions, LLC's ("Esquire") "Plaintiff Esquire Deposition Solution's Memorandum in Opposition to Motion to Dismiss Complaint" (Rec. Doc. 96); (6) defendant CSR Board's "Memorandum in Reply to Plaintiff Esquire Deposition Solutions' Opposition to Motion to Dismiss Complaint" (Rec. Doc. 103); and (7) defendant LCRA's "Reply Memorandum in Support of Motion to Dismiss Complaint Under Federal Rule of Civil Procedure 12(b)(6)" (Rec. Doc. 105).

For the reasons discussed below,

**IT IS ORDERED** that the motions to dismiss (Rec. Doc. 92 & Rec. Doc. 93) are **GRANTED,** dismissing plaintiff Esquire's constitutional vagueness claims against defendants LCRA and the CSR Board, and dismissing plaintff's Sherman Antitrust Act claims against defendant LCRA.

## II. FACTS AND PROCEDURAL HISTORY

### History of Consolidated Cases

The case at issue, Case No. 17-9877, has been consolidated with Case No. 16-13903, with the latter being the master case. *See* Rec. Doc. 75 in 17-9877. Therefore, a short background and procedural history of each case is warranted to put this motion in perspective.

---

Circuit Court of Appeals in *Veritext v. Bonin, Et. Al*, 901 F.3d 287 (5th Cir. 2018).

On September 29, 2017, plaintiff Esquire Deposition Solutions, LLC ("Esquire") filed its complaint alleging that Louisiana Code of Civil Procedure Article 1434 ("Article 1434") was unconstitutionally vague, in violation of the Due Process Clause, the Equal Protection Clause and the Dormant Commerce Clause, and that defendants Louisiana Court Reporter's Association ("LCRA") and the Louisiana Board of Examiners of Certified Shorthand Reporter's ("CSR Board") actions violated the Sherman Antitrust Act ("Sherman Act"). *See* Rec. Doc. 1; *see also* 15 U.S.C. § 1. Prior to Esquire's complaint, plaintiff Veritext Corporation filed a complaint against the CSR Board, alleging all claims included above, except for the constitutional vagueness claim.[3] *See* Rec. Doc. 4, 16-13903.

In *Veritext v. Bonin*, this Court granted defendant CSR Board's a motion to dismiss for failure to state a claim as to all claims alleged by plaintiff Veritext. *See* Rec. Doc. 22; Rec. Doc. 44. That order dismissed the constitutional claims, but the Sherman Act claim was upheld and not dismissed. *See* Rec. Doc. 44 at 11. After a subsequent motion for reconsideration filed by defendants CSR Board, this Court dismissed plaintiff Veritext's Sherman Act Claim stating, "despite the Plaintiff's adequately alleged facts, the actors in the complaint do not fall under the purview of the

---

[3] Plaintiff Vertitext Corporation filed its complaint on August 17, 2016, and then amended the complaint on August 23, 2016.

Sherman Act" because the actions were taken by state officers/agents and subject to *Parker* immunity. *See* Rec. Doc. 48; Rec. Doc. 73. That judgment was appealed to the United States Fifth Circuit Court of Appeals, who affirmed this Court's judgment regarding the constitutional claims and remanded the case regarding the Sherman Act Claim. *See Veritext Corp. v. Bonin*, 901 F.3d 287 (5th Cir. 2018).

All parties agree that the decision of the Fifth Circuit is final and binding on these consolidated actions. *See* Rec Doc. 96 at 2. Thus, the only remaining claim to be addressed in defendant CSR Board's motion for failure to state a claim is the claim that Article 1434 is unconstitutionally vague, which was not addressed in the *Veritext* opinion. *See* Rec. Doc. 94. Likewise, the only claims to be addressed in defendant LCRA's motion to dismiss for failure to state a claim are for the constitutional vagueness of Article 1434 and for the LCRA's alleged violations of the Sherman Act, which were not specifically addressed as to defendant LCRA by the Fifth Circuit in *Veritext*. LCRA was not a party in that appellate action. *See* Rec. Doc. 95; *see also Veritext Corp.*, 901 F. 3d 287.

The subject motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) relate only to plaintiff Esquire Deposition Solutions, LLC. ("Esquire").

**History of Instant Proceedings**

Plaintiff Esquire is a Delaware Corporation with its principal place of business in Atlanta, Georgia. Rec. Doc. 1 ¶ 11. Esquire provides court-reporting services to several states across the nation, including Louisiana, "in depositions, arbitrations, and other proceedings . . ." *Id*. In the instant suit, plaintiff challenges the constitutionality a state statute, Article 1434, which prohibits court reporters from entering into contracts with party litigants, among other restrictions.[4]

Defendant CSR Board[5] is a "regulatory body" created to maintain and police the shorthand reporting profession as well as establish a standard of competency for those persons engaged in the profession. *See* Rec. Doc. 1 at ¶ 13. The CSR Board is composed of "active market participants" as six of the nine members of the board are practicing court reporters. *Id*. at ¶ 15.

Defendant LCRA is a private organization created in 1955 to "educate[], protect[], and promote[] the court reporting profession in Louisiana. LCRA has 'approximately ninety-three (93)

---

[4] Louisiana Code of Civil Procedure Article 1434(A)(2) reads in pertinent part "For purposes of this Article, an employee includes a person who has a contractual relationship with a party litigant to provide shorthand reporting or other court reporting services and also includes a person employed part or full time under contract or otherwise by a person who has a **contractual relationship** with a party litigant to provide shorthand reporting or other court reporting services. A party litigant does not include federal, state, or local governments, and the subdivisions thereof, or parties in proper person." LA. CODE. CIV. PROC. art. 1434(A)(2)(emphasis added).
[5] Paul A. Bonin, Vincent P. Borello, Jr., Milton Donegan, Jr., Suzette Magee, Kimya M. Holmes, John H. Andressen, Mary F. Dunn, Elizabeth C. Methvin, and Laura Putnam are all members of the CSR Board. *See* Rec. Doc. 1 at ¶ 12.

dues-paying members," with annual membership dues set at $76. Rec. Doc. 1 at ¶ 18; *see also* Rec. Doc. 95 at 2. Vincent Borello, and Messrs. Donnegan, Andressen, Dunn, Magee, and Methvin were allegedly members of LCRA while simultaneously holding positions on the CSR Board. *See* Rec. Doc. 1 at ¶ 19.

Plaintiff alleges Article 1434 prohibits court reporters from "offering volume-based price discounts to customers and [the legislation was] motivated by the 'sweet deals [that] were being made to big insurance and defense firms.'" *Id*. at ¶ 1 (citing CSR Board Meeting Transcript, January 20, 2012 at 148:14-149:9). Further, while Article 1434 makes no mention of volume based price discounts, "'sweet deals'", nor contains any language evidencing any legislative intent to displace competition amongst court reporters, defendants LCRA and CSR Board allegedly *agreed* that LCRA members "would not engage in volume-based price discounting, that [The CSR Board members] would exercise their voting control on the board to effect and police their conspiracy, and that the LCRA, the [CSR Board] and its members would use the meetings of the [CSR Board] as cover for discussing ways to suppress price competition among court reporters." *Id*. at ¶ 3. Said differently, plaintiff alleges that defendants LCRA and the CSR Board conspired together to restrict trade by disallowing volume-based discounts to court reporting firms, in violation of the Sherman Antitrust Act. *See* Rec. Doc. 1; *see also* 15 U.S.C. § 1.

## III. LAW AND ANALYSIS

### A. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met his or her burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks

omitted). Plaintiff must "nudge[] [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.Parties attach to their pleadings supporting memorandum and evidentiary material.[6]

**The Sherman Act**

Under Section 1 of the Sherman Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. In order to establish a Section 1 violation, "plaintiffs must show that the defendants (1) engaged in a conspiracy (2) that produced some anticompetitive effect (3) in the relevant market." *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F. 3d 321, 327 (5th Cir. 2014). Additionally, to seek relief for anti-competitive conduct under the Sherman Act, the plaintiff must show both an actual injury and an "antitrust injury"—i.e., the plaintiff must show that "the defendants' activities caused an injury to competition." *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F. 3d 314, 318-19 (5th Cir. 2009); *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance*, 123 F. 3d 301, 307 (5th Cir. 1997).

Defendant LCRA asserts that plaintiff Esquire has not properly plead that LCRA, as an association, engaged in a

---

[6] Under Federal Rule of Civil Procedure 12(b) or 12(d) standards, the result here would remain unchanged. *See* Fed. R. Civ. P. 12(b) & 12(d).

conspiracy to produce an anticompetitive effect. Rec. Doc. 95. In order to prove a conspiracy "in restraint of trade, the Plaintiff must show some kind of 'common design and understanding, or a meeting of the minds in an unlawful arrangement.'" *Abraham & Veneklasen Joint Venture*, 776 F.3d at 330 (citing *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)). The United States Supreme Court has held: "The antitrust Plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). A necessary component of a Sherman Act conspiracy is "a showing of concerted action on the part of the defendants." *Tunica Web Adver. v. Tunica Casino Operator's Ass'n, Inc.*, 496 F.3d 403, 409 (5th Cir. 2007).

Plaintiff alleges in its complaint that LCRA agreed with its members on the CSR Board ["The Court Reporters"] "that the LCRA would not engage in volume-based price discounting, that the Court Reporters would exercise their voting control on the [CSR] Board to effect and police their conspiracy, and that the LCRA, the Court Reporters, and its members would use the meetings of the Board as cover for discussing ways to suppress price competition among court reporter's. *See* Rec. Doc. 1 at ¶ 3. Plaintiff cites transcripts of

CSR Board meeting minutes, emails, and Facebook[7] posts by alleged members of the LCRA, to show concerted activities between the LCRA, the Court Reporters, and the CSR Board. *See* Rec. Doc. 1 at ¶¶ 51-55.

In one such example, plaintiff cites a transcript of a CSR Board meeting. During the meeting, Peter Gilberti (Mr. Gilberti), member of the LCRA Board and the association's current Treasurer and Registered Agent, stated, "[On] behalf of the board of the [LCRA] . . . Our position is we would just like to know what the Board is going to do within its powers . . . [to] have something done about this issue once and for all . . ." Rec. Doc. 1-1, p. 40, CSR Board Meeting Transcript, January 20, 2012. Mr. Gilberti also mentioned "red flag state[s]"[8] and that "[the LCRA] would like to see Louisiana become one of those." *Id.*; Rec. Doc. 1-1.

Further, Mr. Gilberti stated:

> "When [the Court Reporting Firms] don't see anything in your rules and regulations . . . [the Court Reporting Firms are] not labeling [Louisiana] as a red flag state to skip, that they can't do business here, and I think that something needs to come from [the Board's] end, this body, to do something legislatively or through the Administrative Procedure Act, so that those insurance companies get the message that this association is ready to take on responsibility as a State association to send out something to the insurance companies to let them be known or . . . for the State of Louisiana to get the message out."

---

[7] Facebook is a free social networking Web platform that promotes and facilitates interaction between users.
[8] "Red Flag" States in which court reporting firms are not allowed to contract or do business. *See* Rec. Doc. 1-1 at p. 38, CSR Board Meeting Transcript, January 20, 2012.

*Id*. at p. 45. In response to the discussion, Mr. Marcello, of the CSR Board, stated, "I think I can make an argument under our current rules that we have authority to prohibit this practice . . ."[9] *Id*. at p. 41. Plaintiff concludes by arguing that Mr. Gilberti, speaking on behalf of the LCRA, and the CSR came to a "'common design and understanding, or a meeting of the minds in an unlawful arrangement'" to restrain trade by establishing Louisiana as a "red flag" state, thus prohibiting court reporting firms from contracting in Louisiana. *See Abraham & Veneklasen Joint Venture*, 776 F.3d at 330(citing *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946); *See also* Rec. Doc. 1-1 at p. 38, CSR Board Meeting Transcript, January 20, 2012.

LCRA contends that the Court Reporters, while simultaneously being members of the CSR Board and the LCRA, were not acting in their capacity as members of the LCRA when they were engaged in the alleged conspiracy. *See* Rec. Doc. 97 at 7-8. In *Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n,* the District of Columbia Circuit held that "evidence of overlapping membership . . . is not to be treated as probative of conspiracy," and, "[m]ere membership in associations is not enough to establish participation in a conspiracy with other members of those associations, much less a conspiracy between those associations

---

[9] The "practice" that Mr. Marcello is referring to is court reporters, or court reporting firms, contracting with party-litigants.

and yet another association." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253, 265 (D.C. Cir. 1981).

While plaintiff alleges that members of the CSR Board were simultaneously members of the LCRA, that alone does not result in a finding that both associations are engaged in an unlawful conspiracy. Based on above examples as well as other actions by some individuals who simultaneously hold membership on the LCRA and CSR boards, plaintiff asks the court to conclude that LCRA conspired with the CSR to unlawfully suppress competition. Without more, we decline the invitation. Moreover, the acceptance of the invitation does not, per se, end the analysis of this claim, as shown below.

### *Noerr-Pennington* Immunity

Defendants also seek protection under the *Noerr-Pennington* doctrine as a defense to their alleged concerted activities under the Sherman Act.[10] The *Noerr-Pennington* doctrine provides that

---

[10] Plaintiffs contend that the Fifth Circuit's holding in *Veritext* regarding the applicability of *Parker* immunity also forecloses the applicability of *Noerr-Pennington* immunity as well because *Noerr-Pennington* was developed as a "corollary" to *Parker*. Rec. Doc. 96 at 15; *see also Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 379 (1991). This contention is unpersuasive as *Parker* and *Noerr-Pennington* immunity are distinct doctrines. *See George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 424 F.2d 25, 29 n.4 (1st Cir. 1970)(stating "While the two doctrines are often treated as one, we agree with [defendant]'s separate treatment of each. The two are not coterminous.").

As an example, the First Circuit Court of Appeal in *Whitten* stated, "an unsuccessful attempt to influence government action may fall within the Noerr-Pennington immunity, but not the Parker immunity. Conversely, a state regulatory agency may decide to restrain competition without prompting; the beneficiaries, not having solicited government action, would enjoy a Parker immunity but not one based on Noerr-Pennington. Moreover, because of its First Amendment

"parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by an anticompetitive intent." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'n, Inc.*, 858 F. 2d 1075, 1082 (5th Cir. 1988); *see also Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859 (5th Cir. 2000)(stating that *Noerr-Pennington* "confers immunity to private individuals seeking anti-competitive action from the government."); *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (stating "[D]efendants are immune from antitrust liability for engaging in conduct (including litigation) aimed at influencing decision making by the government."). Accordingly, "'petitions' made to the executive or judicial branches of government, e.g., in the form of administrative or legal proceedings, are exempt from antitrust liability even though the parties seek ultimately to destroy their competitors through these actions." *Video Int'l Prod., Inc.*, 858 F. 2d at 1082. Pre-suit threats to litigate, such as cease-and-desist letters, made in good faith are similarly exempt. *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) ("it would be absurd to hold that it does not protect those acts reasonably and normally

---

overtones, the Noerr-Pennington immunity is arguably broader than the Parker exemption." *Whitten*, 424 F.2d at 29.

attendant upon effective litigation.") (footnote and citations omitted).

Plaintiff counters that the alleged petitioning activities involving the CSR Board, specifically requesting enforcement of Article 1434, fall under the "sham exception" to *Noerr-Pennington* immunity. Under the sham exception, a party is not entitled to *Noerr-Pennington* immunity, "when petitioning activity, 'ostensibly directed towards influencing governmental action, is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor'". *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc*., 508 U.S. 49, 56 (1993). The sham exception applies to "defendants who use the *process* as an anticompetitive weapon, rather than those who genuinely seek to *achieve an intended result*." *Bayou*, 234 F. 2d at 861-62 (emphasis added). The United States Supreme Court has articulated a two-part test for determining whether lobbying, or litigation petitioning activity is a sham. *Professional Real Estate Investors*, *Inc*., 508 U.S. at 50. In order for petitioning activity to be considered a "sham,":

> First, the lawsuit [lobbying or request] must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Only if challenged litigation [lobbying or request] is objectively meritless may a court examine the litigant's subjective motivation.
>
> . . .[S]econd . . . a court should focus on whether the baseless suit [lobbying or request] conceals 'an attempt

> to interfere directly' with a competitor's business relationships, through the 'use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon,'

*Id.* (citing *Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991)) (internal citations omitted) (emphasis in original) (added language bracketed). Further, petitioning activity is not strictly limited to lawsuits but also encompasses "lobbying activities." *See Bayou*, 234 F.3d at 861-62 (stating that lobbying activities of a party to include "[c]ontact[ing] a Parish Councilmember and wr[iting] letters to the Army Corps of Engineers.").

Under the first prong of the sham test, the Fifth Circuit has held that "[l]obbying activity is objectively baseless if a reasonable private citizen could not expect to secure favorable government action. *Id*. at 862 (citing *Professional Real Estate Investors, Inc.*, 508 U.S. at 60). Under the second prong of the sham test, petitioning activity will fall under the sham exception when a party "'petitions' the government by engaging administrative processes only to preclude or delay its competitor's access to those processes . . ." *Video Int'l Prod., Inc.,* 858 F.2d at 1082.

The United States Supreme Court has noted, "[a] classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving

15

denial of the license but simply in order to impose expense and delay." *Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991). The Court in *Omni* further held, "A 'sham' situation involves a defendant whose activities are 'not genuinely aimed at procuring favorable government action' at all, not one 'who 'genuinely seeks to achieve his governmental result, but does so through improper means,''" *Id.* (internal citations omitted).

In this case, defendant has shown entitlement to *Noerr-Pennington* immunity for their petitioning activities requesting the CSR Board to enforce Article 1434. Plaintiff asserts that defendant LCRA "made baseless repetitive complaints to the Board and caused it to issue subpoenas, show cause orders, and engage in widespread coercion directed at insurance companies, private attorneys, and national court reporting firms over which it had no jurisdiction." Rec. Doc. 96 at 15. Because LCRA is a private citizen, who effectively lobbied the CSR Board, a "regulatory body,"[11] to enforce Article 1434, LCRA's actions are permissible petitioning activity protected under *Noerr-Pennington*. Rec. Doc. 1 at ¶ 13.

---

[11] The CSR Board "aid[s] in all matters pertaining to the advancement of the science of shorthand reporting . . . including but not by way of limitation, all matters that may advance the professional interest of certified shorthand reporters, including the development, implementation, and enforcement of continuing education requirements and such matters as concern their relations with the public." Rec. Doc. 1 ¶ 13; *see also* LA. REV. STAT. ANN. § 37:2553.

16

Further, the sham exception is not applicable because the lobbying activities conducted by LCRA were not objectively baseless. Defendant LCRA's Treasurer and Registered Agent, Mr. Gilberti, (1) attended a CSR Board meeting, (2) announced he was speaking on behalf of the LCRA, and (3) implored the Board to "do something" with regard to enforcing Article 1434 and making Louisiana a "red flag state." Rec. Doc. 1-1 at p. 38, 40, CSR Board Meeting Transcript, January 20, 2012. A reasonable private citizen, speaking at a regulatory board meeting, and requesting enforcement and compliance with an existing provision of the law, could reasonably expect, as shown here, to procure a favorable result. "Just as evidence of anticompetitive intent cannot affect the objective prong of *Noerr* 's sham exception, a showing of malice alone will neither entitle the wrongful civil proceedings plaintiff to prevail nor permit the factfinder to infer the absence of probable cause." *Professional Real Estate Investors, Inc.* 508 U.S. at 63, 113 S. Ct. at 1929. Even if the petitioning activity by LCRA was baseless, it would pass the subjective component of the test articulated by the Supreme Court in *Professional Real Estate Investors, Inc.*, 508 U.S. at 56. Accordingly, LCRA's motion should be granted, dismissing plaintiff's Sherman Act claims.

Based on the foregoing, even if LCRA is shown to have participated in a concerted effort to restrain trade with the CSR Board, plaintiff Esquire has failed to establish the objective

prong of *Noerr*'s sham exception. *Professional Real Estate Investors, Inc.* 508 U.S. at 49, 50, 113 S. Ct. at 1922. Defendant LCRA is therefore entitled to *Noerr-Pennington Immunity*.

**Constitutional Vagueness**

Defendants LCRA and CSR Board contend that Article 1434 is not unconstitutionally vague in that it is "crystal-clear in prohibiting a Louisiana Court reporter from entering into an agreement, directly or indirectly, with a party litigant to provide court reporting services. *See* Rec. Doc. 94; see also Rec. Doc. 95 (stating "It is clear that the article forbids anyone taking a deposition to have a contractual relationship to provide shorthand reporting or other court reporting services with a party litigant, unless that litigant is a governmental entity or a party in proper person."). Plaintiff asserts that Article 1434 is unconstitutionally vague "as applied and facially" because the article does not "specify[] the contractual relationships that are banned." Rec. Doc. 96 at 19. Article 1434 reads in pertinent part:

> A deposition shall be taken before an officer authorized to administer oaths, who is not an **employee** or attorney of any of the parties or otherwise interested in the outcome of the case.
>
> For purposes of this Article, an employee includes a person who has a **contractual relationship** with a party litigant to provide shorthand reporting or other court reporting services and also includes a person employed part or full time under contract or otherwise by a person who has a contractual relationship with a party litigant to provide shorthand reporting or other court reporting services. A party litigant does not include federal,

> state, or local governments, and the subdivisions thereof, or parties in proper person."

La. Code. Civ. Proc. art. 1434(A)(1)(2) (emphasis added).

The Fifth Circuit has held that the appropriate standard for whether a law is unconstitutionally vague hinges on whether the law is civil or criminal in nature. *Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, at 507 (5th Cir. 2001). In *Ford Motor Co.*, the Fifth Circuit stated that "a less stringent standard is applied to civil statutes that regulate economic activity." *Id*. In determining whether the civil statute is vague, courts in the Fifth Circuit will invalidate a statute if "'it commands compliance in terms ' so vague and indefinite as to really be no rule or standard at all' . . . 'or if it is substantially incomprehensible.'" *Id*. (citing *United States v. Clinical Leasing Service, Inc*., 925 F.2d 120, 122 n. 2 (5th Cir. 1991)).

Here, the plain text of Article 1434 is clear. Court reporters in Louisiana may not take depositions if they are employed by a party to the action which the deposition pertains. La. Code. Civ. Proc. art. 1434(A)(2). Article 1434 states that an employee is someone who "has a contractual relationship with a party litigant to provide shorthand reporting services." *Id*. Article 1434 is sufficiently clear in stating as to who may take a deposition in Louisiana, and that anyone with a contractual relationship with a party to the action at hand is not permitted to take a deposition.

In response to plaintiff's contentions about whether Article 1434 prohibits a laundry list of actions, it is clear that Article 1434 prohibits *all* contractual agreements between party litigants and court reporters. Article 1434 is by no means "substantially incomprehensible." *Ford Motor Co.*, 264 F.3d at 507. Thus, plaintiff's claim that Article 1434 is unconstitutionally vague or overly broad has no merit. Defendants LCRA and CSR Board's motions to dismiss should also be **GRANTED** with respect to this claim.

New Orleans, Louisiana this 26th day of September, 2019

_____
SENIOR UNITED STATES DISTRICT JUDGE