UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VERITEXT CORP.,** | **CIVIL ACTION NO. 16-13903** |
| Plaintiff, | c/w Civil Action No. 17-9877 |
| v. | |
| **JOHN J. LEE, JR., VINCENT P. BORRELLO, JR., MILTON DONEGAN, JR., SUZETTE MAGEE, KIMYA M. HOLMES, JOHN H. ANDRESSEN, MAY F. DUNN, ELIZABETH C. METHVIN, and LAURA PUTNAM, in their official capacities as Members of the Louisiana Board of Examiners of Certified Shorthand Reporters,** | **JUDGE IVAN L.R. LEMELLE** <br><br> **MAG. JUDGE JOSEPH C. WILKINSON** <br><br> **SECTION "B"(2)** |
| Defendants. | |

**PLAINTIFFS' ESQUIRE DEPOSITION SOLUTION LLC'S AND VERITEXT CORP.'S MEMORANDUM IN OPPOSITION TO THE CSR BOARD DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Veritext Corp. ("Veritext") and Esquire Deposition Solutions, LLC ("Esquire") oppose the Motion for Partial Summary Judgment filed by the CSR Board Defendants.

**SUMMARY OF OPPOSITION**

The CSR Board Defendants seek summary judgment on the argument that the Court cannot award damages or injunctive relief even if Plaintiffs prevail on liability when Article 1434 prohibits "contracting" and the CSR Defendants were doing nothing more than enforcing the law as written. The CSR Defendants offered no evidence in support of their motion. The CSR Defendants also raised this identical argument in their opposition to the appeal before the

{N3906429.2}

Fifth Circuit, and the Fifth Circuit specifically rejected it. *Veritext Corp. v. Bonin*, 901 F.3d 287 (5th Cir. 2018). This decision is the law of the case and binding on these proceedings. To make matters worse, the CSR Defendants base their entire argument on a 1983 decision by the Eighth Circuit without disclosing to the Court that the Eighth Circuit, in its own words, "was in fundamental disagreement" with the Fifth Circuit at the time that it issued its opinion or that the United States Supreme Court subsequently rejected the Eighth Circuit's analysis in *N. Carolina State Bd. of Dental Examiners v. FTC*, 574 U.S. 494, 135 S. Ct. 1101 (2015). *See First American Title Co. v. South Dakota Land Title Assoc.*, 714 F.2d 1454-55 (8th Cir. 1983).[1]

**FACTUAL BACKGROUND**

Discovery has revealed that the court reporter members of the CSR Board (the "Court Reporters")[2] exercised their majority control over the Board to restrain competition and raise rates for freelance court reporting services in Louisiana. Documents produced by the CSR Defendants disclose, for example, that the Court Reporters caused the CSR Board to engage in a rabid and sustained campaign to eliminate price competition in the form of volume discounts among freelance court reporters in Louisiana and exclude out-of-state court reporting firms from the Louisiana market.[3] In connection with their campaign, the Court Reporters caused the CSR

---

[1] The Eighth Circuit wrote: "First American relies on cases from the Ninth and Fifth Circuits in arguing that the challenged regulations were not compelled by the South Dakota legislature, thus they are not entitled to state action immunity. *Ronwin v. State Bar of Arizona*, 686 F.2d 692 (9th Cir. 1981), cert. granted, 461 U.S. 926, 103 S. Ct. 2084, 77 L. Ed. 2d 296, 51 U.S.L.W. 3825 (1983); *United States v. Texas State Board of Accountancy*, 464 F. Supp. 400 (W.D.Tex. 1978), modified, 592 F.2d 919 (5th Cir.), cert. denied, 444 U.S. 925, 100 S. Ct. 262, 62 L. Ed. 2d 180 (1979). Our above discussion should indicate, however, that we are in fundamental disagreement with our brethren in these circuits regarding application of the state action doctrine to state agencies or subdivisions." *Id.*

[2] The court reporter members of the CSR Board at the time suit was filed were Vincent P. Borrello, Jr., Milton Donegan, Jr., John H. Andressen, May F. Dunn, Suzette Magee, and Elizabeth Methvin and each has been sued by Esquire and Veritext in their official and individual capacities (the "Court Reporters").

[3] *See* Breckinridge Declaration (Breckinridge Decl.) Exhibit 1 at AND-0023 – AND-0030; *Id*. Ex. 2 at BON-0283, 0205; *Id*. Ex. 3 at BON-0422; *Id*. Ex. 4 at BON-0260, 0264, 0267; *Id*. Ex. 5 at BON-0335; *Id*. Ex. 6 at BON-0354;
{N3906429.2}

2

Board to adopt rules and regulations through which they obtained pricing information from their competitors and directed court reporters not to offer volume discounts.[4] They also caused the CSR Board to issue subpoenas to court reporters, court reporter associations, and out-of-state court reporting firms,[5] initiate investigations against court reporters who conducted business with out-of-state court reporting firms,[6] and contact insurance companies and law firms by telephone and in writing to discourage them from doing business with out-of-state court reporting firms.[7]

Discovery has also revealed recordings of meetings among large groups of court reporters in which the Court Reporters used "ethics training" as a forum to let court reporters discuss and agree on strategies for eliminating price competition and excluding out-of-state competitors. The strategies discussed by the court reporters included breaking "this state into five or six regions" and "you get 10 firms in that region . . . and make a committee" and then say "Let's come up with some prices of what we think we need to charge for lay witnesses, expert witnesses, 24-hour expedited."[8]  Others suggested creating a "standard of the industry" rate.[9] Some proposed exchanging rate sheets or reporting court reporters to the CSR Board when they worked with

---

*Id*. Ex. 7 at HOL-0692; *Id*. Ex. 8 at VRLA_00000077; *Id*. Ex. 9 at VRLA_00000041; *Id*. Ex. 10 at VRLA_00000186; *Id*. Ex. 11 at VRLA_00000054; *Id*. Ex. 12 at VRLA_00000085; *Id*. Ex. 13 at MAG-0127-128; *Id*. Ex. 14 at AND-0095; *Id.* Ex. 15; *Id*. Ex. 16 at MAG-0107; *Id*. Ex. 17 at MAG-0125; *Id*. Ex. 18 at DON-0004; *Id.* Ex. 19 at 1-36; *Id*. Ex. 20 at 6-10; *Id*. Exs. 21-29, 32-49.

[4] *Id*. Exs. 1-29, 32-49.

[5] *Id*. Ex. 21, 25-29, 45.

[6] *Id*. Ex. 6, 8, 22 at Board-000367-000371; *Id*. Ex. 23 at Board-001142-001159, Ex. 33.

[7] *Id*. Ex. 15 at Veritext-000011-000013; *Id*. Ex. 21 at BON-0047-0049; *Id*. Ex. 48.

[8] *Id*. Ex. 19 at time stamp 2:41-7:57.

[9] *Id.*

{N3906429.2}

out-of-state court reporting firms.[10] One of the speakers at the seminar reported that a committee of the CSR Board would be meeting the following week and that the Court Reporters "could do a seminar for two days straight and never even finish talking about it at all."[11]

The Court Reporters also used their influence as officers, directors, and members of the Louisiana Court Reporters Association ("LCRA") to enlist its support in their cartel. The minutes of the LCRA board meetings reflect that the LCRA had a policy against "contracting" generally even though Louisiana law only prohibited certain types of agreements, that it sent letters to Louisiana law firms and insurance companies urging them not to do business with out-of-state court reporting firms, and that it urged a national trade association to adopt similar policies and practices.[12] Even though the national association informed LCRA that it would not join in the cartel based on advice from its legal counsel, the LCRA President reported to Mr. Borrello and other board members that she was disappointed by the "NCRA doing a 360" but she did want not go "on the record" by sending a letter "due to the pending lawsuit"[13]

One Louisiana court reporter wrote an email to another state trade association in which she offered the following comments about the actions of the CSR Defendants:

> Just had time to read this garbage. They are going way beyond what the legislation intended and making so much work out of it by requiring that we file these affidavits. *The out of state companies need to get together and file suit against the Board for trying to shut them down.* This had gotten way out of hand. We had something done to protect the reporters and look what they've done with it.[14]

---

[10] *Id.*

[11] *Id.*

[12] *Id*. Exs. 24-25, 36, 47-49

[13] *Id*. Ex. 24 at LCRA-000577

[14] *Id*. Ex. 11 at VRLA_00000054.

{N3906429.2}

Similarly, the declaration of the owner of a New Orleans court reporting firm reveals that she was "specifically instructed to inform Veritext that we would have to cancel whatever upcoming jobs we had on our books" and that "members of the CSR Board also shared that they had concerns that these out-of-state court reporting firms, like Veritext, were offering discounts for court reporting services."[15] The CSR Defendants also told her that she had no option but to report any court reporter who showed up for the canceled depositions.[16] The declaration also reveals that she contacted "numerous board members as well as the Board legal counsel multiple times for clarification [on the scope of Louisiana Code of Civil Procedure Article 1434] only to be given a different understanding from each one of them, to our complete disbelief and frustration."[17]

As set forth the attached expert report, empirical data and econometric analysis also disclosed that: (1) rates for freelance court reporting services in Louisiana are currently and have been historically, on average, substantially higher than in the rest of the United States; (2) rates for court reporting services in Louisiana over the past decade have risen in Louisiana more quickly than in the rest of the United States; (3) these higher rates have been established artificially through the coordinated conduct of an industry cartel and are not cannot be explained by normal economic supply and demand conditions or other non-cartel economic factors; and (4) the cartel has been successful in substantially limiting Veritext and Esquire in their ability to compete in Louisiana and in increasing the costs for consumers and their rivals.[18]

---

[15] Declaration of Joanne Curren (Curren Decl.) ¶ 4.

[16] *Id.* ¶ 5.

[17] *Id.* ¶¶ 4-5,10.

[18] *See* Breckinridge Decl. Ex. 31 (Expert Report of Robert B. Kulick, PhD (filed under seal)).

{N3906429.2}

## **LAW AND ARGUMENT**

In their motion, the CSR Defendants do not seek summary judgment on liability, but rather argue that Plaintiffs would not be entitled to damages or injunctive relief even if they prevailed on liability. The argument is nonsensical. The Fifth Circuit would not have reinstated the antitrust claim against the CSR Defendants had no remedy been available.

### A.     Defendants Are Not Entitled to Immunity.

In *Veritext Corp. v. Bonin*, 901 F.3d 287 (5th Cir. 2018), the Fifth Circuit reversed this Court's dismissal of the Sherman Act claim on reconsideration and held "the district court was correct the first time when it observed that Veritext alleged sufficient facts that "the board's actions do not resemble a municipality under active supervision but instead represent an unbridled regulatory environment." *Id.* In doing so, the Fifth Circuit held that defendants are not immune from antitrust liability based on their enforcement of Louisiana Code of Civil Procedure Article 1434 when their conduct was not actively supervised by the State. If the CSR Defendants are not immune from antitrust liability, they are not immune to antitrust remedies.

### B.     Defendants Raised the Same Immunity Arguments with the Fifth Circuit.

According to the CSR Defendants, the Court cannot award damages or injunctive relief when Article 1434 prohibits contracting and the CSR Defendants were doing nothing more than enforcing the law as written. This argument is simply a restatement of the immunity defense that was rejected by the Fifth Circuit. For example, in briefing before the Fifth Circuit, the CSR Defendants argued that: "If ultimately successful, Veritext's Sherman Act claim would prohibit the CSR Board from following its statutorily directed duty to put the text of Article 1434 into effect and would thereby effectively short-circuit the immunity established by *Parker*." *See* Brief of Appellees, Case No. 17-30691, Rec. Doc. 00514258203 at pages 52-53; *see generally*

{N3906429.2}

*id.* Section (V)(A) at 50-65 ("The CSR Board's Enforcement of Article 1434 Is *Ipso Facto* Immune from Suit Under *Parker*."). This argument is identical, to the arguments in the pending summary judgment motion. *See* Memorandum in Support of Motion for Partial Summary Judgment, Rec. Doc. 141-1 at 9-12 ("Because the Sherman Act does not preempt Article 1434, (1) the CSR Board cannot be enjoined from enforcing its clear prohibitions and (2) the Court Reporter Members of the Board cannot be cast in judgment for a loss of earnings resulting from the Board's enforcement of Article 1434's clear prohibitions.").

This Court is bound by the Fifth Circuit decision in this case and by the decision in *North Carolina Board of Dental Examiners*. As such, the CSR Defendants cannot avoid injunctive relief. Nor can the CSR Defendants who have been sued in their personal capacity – i.e., the court reporters who financially benefitted from their anticompetitive conduct – avoid damages.

    **C.**    **Defendants Improperly Rely on Overruled Case Law.**

In support of their arguments, the CSR Defendants rely entirely on a 1983 decision by the Eighth Circuit. *See First American Title Co. v. South Dakota Land Title Assoc.*, 714 F.2d 1454-55 (8th Cir. 1983). In that decision, the Eighth Circuit concluded that state regulatory boards are absolutely immune from antitrust liability under *Parker* as a matter of federalism. *Id.* This decision conflicted with Fifth Circuit precedent at the time and was overruled by *N. Carolina State Bd. of Dental Examiners v. FTC*, 574 U.S. 494, 135 S. Ct. 1101 (2015).

Although the CSR Defendants never mentioned it, the Eighth Circuit specifically acknowledged its disagreement with the Fifth Circuit at the time: "First American relies on cases from the Ninth and Fifth Circuits in arguing that the challenged regulations were not compelled by the South Dakota legislature, thus they are not entitled to state action immunity. *Ronwin v. State Bar of Arizona*, 686 F.2d 692 (9th Cir. 1981), cert. granted, 461 U.S. 926, 103 S. Ct. 2084,

{N3906429.2}

77 L. Ed. 2d 296, 51 U.S.L.W. 3825 (1983); *United States v. Texas State Board of Accountancy*, 464 F. Supp. 400 (W.D.Tex. 1978), modified, 592 F.2d 919 (5th Cir.), cert. denied, 444 U.S. 925, 100 S. Ct. 262, 62 L. Ed. 2d 180 (1979). Our above discussion should indicate, however, that we are in fundamental disagreement with our brethren in these circuits regarding application of the state action doctrine to state agencies or subdivisions. *Id.* at 1454-554."

Thus, even if the Fifth Circuit had not already reinstated the antitrust claim in this case and even if the United States Supreme Court had not decided *North Carolina State Board of Dental Examiners*, the arguments raised by the CSR Defendants fail as a matter of law

### D. Disputed Issues of Fact Preclude Summary Judgment

The CSR Defendants argue that Veritext and Esquire cannot recover damages because any revenues they earned from providing court reporting services in Louisiana would have been derived from violations of Louisiana Code of Civil Procedure Article 1434. The argument is meritless. Article 1434 of the Louisiana Code of Civil Procedure prohibits court reporters from accepting jobs from party-litigants or their employees. The term "employee" is defined in subsection (A)(2) of Article 1434 as a "person employed part or full time under contract or otherwise by a person who has a contractual relationship with a party-litigant to provide shorthand or other court reporting services." La. C. Civ. Pro. Art. 1434.

At his deposition, the former Chair of the CSR-Board testified that Article 1434 prohibits Louisiana court reporters from accepting assignments from out-of-state court reporting firms hired by party-litigants but it does not prohibit Louisiana court reporters from accepting assignments from out-of-state court reporting firms hired by attorneys as long as the out-of-state firm has no agreement with the party-litigant.[19] Judge Bonin further explained that court

---

[19] Breckinridge Decl. Ex. 30.

{N3906429.2}

reporters could work for court reporting firms hired by attorneys even when the attorneys were directed by clients to hire the out-of-state court reporting firms so long as the clients did not have contracts with the out-of-state firms.[20]  In other words, "contracting" is not prohibited generally and not all contracts between court reporters and out-of-state court reporting firms are unlawful.

In their Statement of Material Facts Presenting No Genuine Issue, the CSR Defendants claim that the "court reporting services offered by Esquire and Veritext in Louisiana are provided by certified shorthand reporters who are licensed and regulated by the Louisiana Board of Examiners of Certified Shorthand Reporters."  The CSR Defendants then argue that Esquire and Veritext cannot recover damages for the inflated rates charged by Louisiana court reporters because all contracts between party litigants and court reporters are illegal.  The argument fails.

First, the CSR Defendants incorrectly assume that Plaintiffs are seeking damages based on an overcharge theory.  The expert report, however, discloses that Veritext and Esquire are pursuing a damage theory based on raising rival costs.[21]  The CSR Defendants sought to exclude Veritext and Esquire from the Louisiana market.  They implemented their cartel through naked price fixing agreements, compelling competitors to disclose pricing information, exchanges of pricing information, and acts of intimidation that were neither contemplated nor authorized by Article 1434.  As the Fifth Circuit recognized, meeting on "How to Raise Rates" fell well outside the contracting provisions of Article 1434.  Moreover, the expert economic analysis demonstrates that the CSR Defendants succeeded in harming competition and, in so doing, substantially increased the costs of doing business in Louisiana for Plaintiffs.[22]  Thus, Veritext

---

[20] *Id*.

[21] *Id*. Ex. 31.

[22] *Id*.

{N3906429.2}

and Esquire have alleged damages based on losses in margin and market share which cannot be attributed to or characterized as having been derived from unlawful agreements.

Second, the CSR Defendants made no effort whatsoever to introduce evidence to support their assertion that Plaintiffs seek damages based on unlawful agreements between court reporters and party litigants. The CSR Defendants offered no evidence of the existence of such agreements. The motion, therefore, fails for lack of proof. The record evidence submitted by Plaintiffs also creates numerous disputed issues of fact. For example, in his declaration, the General Counsel of Esquire confirms that Esquire does not enter into contracts with party litigants to provide court reporting services in Louisiana. *See* Declaration of Avi Stadler. Finally, as Judge Bonin explained, Article 1434 does not regulate out-of-state court reporting firms, insurance companies, or anyone other than court reporters. Accordingly, the CSR Defendants cannot rely on Article 1434 to prevent Plaintiffs from recovering damages.

## CONCLUSION

This Court is bound by the Fifth Circuit decision in this case and by the decision of the United States Supreme Court in *North Carolina Board of Dental Examiners*. As such, the CSR Defendants cannot avoid injunctive relief. Nor can the CSR Defendants who have been sued in their personal capacity – i.e., the court reporters who financially benefitted from their anticompetitive conduct – avoid damages. The CSR Defendants utilized coercive measures to disrupt competition; measure that were ultra vires under state law. As such, as the Fifth Circuit held, the antitrust claim against the CSR Defendants effected no intrusion on state prerogatives. Rather, by abusing the regulatory process, the CSR Defendants have absolutely frustrated rather than furthered the State's policy choices and, therefore, cannot insulate themselves from federal antitrust remedies. Their motion should be denied.

{N3906429.2}

Respectfully submitted,

*/s/ Mark A. Cunningham*

MARK A. CUNNINGHAM, T.A. (# 24063)
ALEXANDER N. BRECKINRIDGE, V (# 36155)
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone:  (504) 582-8000
Facsimile:  (504) 582-8583
mcunningham@joneswalker.com
rbieck@joneswalker.com
abreckinridge@joneswalker.com

***Attorneys for Plaintiffs Esquire Deposition Solutions, LLC and Veritext Corp.***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all parties or their attorneys by providing the same by electronic mail, on this 12th day of November, 2019.

*/s/  Alexander N. Breckinridge V*

{N3906429.2}