**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VERITEXT CORP.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-13903 C/W**<br>**17-9877**<br>**REF: ALL CASES** |
| **PAUL A. BONIN, ET AL.** | **SECTION: "B"(2)** |

**OPINION**

Before the court are defendants CSR Board's "Motion for Partial Summary Judgment" (Rec. Doc. 141), plaintiffs Esquire Deposition Solutions, LLC and Veritext Corporation's response in opposition (Rec. Doc. 159) and defendants' reply to plaintiffs' opposition (Rec. Doc. 178).

**I.   FACTS AND PROCEDURAL HISTORY**

Plaintiff, Veritext Corporation, is a Delaware corporation that provides court reporting services to clients in depositions, arbitrations, and other legal proceedings in Louisiana and across the United States. Rec. Doc. 4. Plaintiff's business provides negotiated rates for court reporting services to insurance companies, larger companies, government agencies, regulatory authorities, educational institutions, and other high-volume entities. Rec. Doc. 4. The negotiated rates are discounted because customers enter into nonexclusive preferred-provider agreements with Plaintiff. Rec. Doc. 4. The nonexclusive preferred-provider agreements generally provide that customers agree to utilize

1

Plaintiff's services for all or some of their court reporting needs. Rec. Doc. 4.

Plaintiff Esquire is a Delaware corporation with its principal place of business in Atlanta, Georgia. Rec. Doc. 1 at ¶ 11 (17-9877). Esquire provides court-reporting services to several states across the nation, including Louisiana, in depositions, arbitrations, and other proceedings. *Id.*

Defendant CSR Board is a regulatory body created to maintain and police the shorthand reporting profession as well as establish a standard of competency for those persons engaged in the profession. *See* Rec. Doc. 1 at ¶ 13 (17-9877). The CSR Board members are "active market participants" as six of the nine members are practicing court reporters. *Id.* at ¶ 15.

The court reporting profession is regulated by the Louisiana Board of Examiners of Certified Shorthand Reporters (the "Board"). Rec. Doc. 4. The Board is vested with enforcement authority in addition to its regulation of court reporters. Rec. Doc. 4. In or about 2012, the Board publicly announced its intention to begin enforcing Article 1434(A)(2). To wit, La. Code. Civ. Proc. Art. 1434(A)(2):

> (1) prevents court reporters from entering into long term or volume-based contracts with frequent users of court reporting services; (2) concerns potential bias issues in connection with court reporting firms who hold contracts with lawyers and the judiciary; and (3) attempts to mitigate conflicts of interest when in connection with the creation of official records.

Rec. Doc. 4. Following the announcement, many certified court reporters refused assignments from national and regional firms out of fear that the Board might take disciplinary action against them. Rec. Doc. 4.

On August 17, 2016, plaintiff Veritext filed a complaint against defendants, certain members of the Board in both their official and individual capacities, challenging Louisiana Code of Civil Procedure Article 1434(A)(2). Rec. Doc. 4.[1] Plaintiff specifically challenged the law's constitutionality, alleging that it insulates court reporters in Louisiana from competition in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Rec. Doc. 4.

On April 10, 2017, this Court granted in part and denied in part defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Rec. Doc. 44. As to the constitutional challenges, this Court dismissed plaintiff Veritext's claims. Rec. Doc. 44. Further, plaintiff Veritext's claims under the Sherman Act were found "legally viable and the Amended Complaint has alleged facts that [were] sufficient to defeat" defendants' motion to dismiss. Rec. Doc. 44. On May 4, 2017, Defendants filed a motion for partial reconsideration regarding the Sherman Act claims,

---

[1] Plaintiff Esquire filed their respective claim against defendants on September 29, 2017. The cases were consolidated on February 25, 2019 (Rec. Doc. 75) (17-9877). Plaintiff Veritext subsequently amended their complaint to mirror that of Esquire's complaint. Rec. Doc. 117.

which this Court granted on August 2, 2017. Rec. Docs. 48,73. Plaintiff thereafter appealed to the United States Fifth Circuit Court of Appeals. Rec. Doc. 75.

On appeal, the Fifth Circuit affirmed this Court's dismissal of plaintiff Veritext's constitutional law claims. Rec. Doc. 82-1. However, the panel reversed the dismissal on reconsideration of plaintiff Veritext's Sherman Act claims and remanded the matter for further proceedings. *Id*. Thereafter, defendants CSR filed instant motion for partial summary judgment on October 14, 2019, requesting "dismiss[al] [of] all Sherman Act claims of [plaintiffs] seeking to enjoin the enforcement of [La. Code Civ. Proc. Art.] 1434" and "all Sherman Act claims seeking to recover alleged monetary damages resulting from the enforcement of Article 1434." Rec. Doc. 141-1 at 1.

## II. PARTIES' CONTENTIONS

In their motion, defendants reiterate this Court's and the Fifth Circuit's findings that Article 1434 is constitutional and clearly prohibits "all contractual agreements between party litigants and court reports." Rec. Doc. 141-1, at 5,10. In light of these constitutional findings, defendants contend that Article 1434 is not subject to scrutiny under the Sherman Act and the Board "cannot run afoul of the Sherman Act." *Id*. at 9-12. Defendants also contend that the CSR Board is the appropriate state agency vested with regulatory jurisdiction and enforcement authority

4

pertaining to the court reporting profession. *See id.* at 11-12.
Accordingly, defendants assert that the CSR Board "cannot be
subject to scrutiny under the Sherman Act . . . and . . . cannot
be enjoined or cause damages recoverable under the Sherman Act."
*Id.* at 2. Thus, defendants assert that damages sought by plaintiffs
are not recoverable damages due the CSR Board's authority to
enforce Article 1434, which renders the purported damages
"illicit." *Id.* at 11.

In its opposition, plaintiffs assert that defendants "do not
seek summary judgment on liability, but rather argue that
[p]laintiffs would not be entitled to damages or injunctive relief
even if they prevailed on liability." Rec. Doc. 159 at 6.
Plaintiffs argue that defendants have merely reasserted their
previous immunity defense, despite the Fifth Circuit's ruling that
defendants have not fully satisfied the standard. Rec. Doc. 159 at
6-8. Moreover, plaintiffs contend that Article 1434 generally does
not prohibit "all contracts between court reporters and out-of-
state court reporting firms." Rec. Doc. 159 at 9.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is
appropriate when "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as

a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); *see also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. "When reviewing a summary judgment, we construe all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, LLC*, 850 F.3d 742, 745 (5th Cir. 2017). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof

at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the non-moving party could or would prove the necessary facts and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

## IV. LAW AND ANALYSIS

### A. Scrutiny under the Sherman Act

Defendants fail to demonstrate an absence of a genuine issue of material fact pertaining to the Sherman Act claims against them. Section 1 of the Sherman Act provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. In order to prevail under a Section 1 violation, a plaintiff "must show a contract, combination, or conspiracy that imposed an unreasonable restraint on trade." *Veritext Corp. v. Bonin*, 901 F.3d 287, 291 (5th Cir. 2018) (citing *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 189 (2010)); *see also Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321,

327 (5th Cir. 2015) ("plaintiffs must show that the defendants (1) engaged in a conspiracy (2) that produced some anticompetitive effect (3) in the relevant market"). Further, a plaintiff must demonstrate an injury-in-fact (e.g., an injury to plaintiff proximately caused by defendant's conduct) and an antitrust injury resulting from an anticompetitive effect. *See Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009)(explaining that injury should reflect anti-competitive effect either of the violation itself or of anticompetitive acts enabled by the violation) (citing *Zenith Radio Corp. v. Hazeltine Research*, Inc., 395 U.S. 100, 125 (1969)).

Defendants have merely reasserted an identical state action immunity defense. On appeal, the Fifth Circuit held that Plaintiff's Sherman Act claim should proceed on remand. *Veritext Corp.*, 901 F.3d at 291. In its reasoning, the Fifth Circuit concluded that this Court "was correct the first time when it observed that Veritext alleged sufficient facts that 'the board's actions do not resemble a municipality under active supervision but instead represent an unbridled regulatory environment.'" *Id*. at 293. The Fifth Circuit further stated:

> Veritext pled facts sufficient to support a finding that the Board's conduct does indeed restrain trade. Among other allegations, Veritext argued that the Board is composed of active market participants who "are highly engaged in setting the agenda of the Board and its committees and in directing the Board's business," who actively sought to "discourage a perceived trend of

> freelance court reporters leaving the profession," and
> who took regulatory actions calculated to "deter[ ] and
> delay[ ] entry by national and regional court reporting
> firms." On the record before us, we agree with the
> district court that *Veritext has alleged facts
> sufficient to make out a prima facie Sherman Act claim*.

*Id.* at 292 (emphasis added).

Defendants argue that Article 1434 "prohibits all contractual agreements between party litigants and court reporters." Rec. Doc. 141-1 at 10. Whereas plaintiffs assert that Article 1434 does not prohibit contracts generally, provided that the firm "has no agreement with the party-litigant," and point to the former chair of the CSR Board's deposition testimony to support this contention. Rec. Doc. 159 at 8-9. Moreover, as articulated by the Fifth Circuit, the CSR Board is composed of active market participants who "are highly engaged" in perceived anticompetitive conduct, which reveals the presence of a genuine issue of material fact concerning the conspiracy element of the Sherman Act claim in the instant lawsuit. *Veritext Corp.*, 901 F.3d at 287.

Accordingly, parties to the current motion clearly dispute the existence of a contract, combination, or conspiracy that restrains the court reporting profession. Rec. Doc. 141-1; Rec. Doc. 159. Thus, whether a contract, combination, or conspiracy restraining the profession presents a genuine issue of material fact, regarding the CSR Board, and does not support a finding that defendant is judgment as a matter of law.

9

**B.    Immunity**

Defendants are not entitled to immunity from the Sherman Act. Anticompetitive conduct by the State generally is immune from the liability under the Sherman Act, but this immunity is not absolute. *Veritext Corp. v. Bonin*, 901 F.3d 287, 292 (5th Cir. 2018)(citing *Parker v. Brown*, 317 U.S. 341, 351 (1943)). A defendant's ability to avail themselves of this type of state action immunity is contingent on whether anticompetitive conduct is performed by sovereign or non-sovereign actors. *N. Carolina State Bd. of Dental Examiners v. FTC*, 135 S.Ct. 1101, 1111-12 (2015) ("The question is not whether challenged conduct is efficient, well-functioning, or wise. Rather, it is whether anticompetitive conduct engaged in by nonsovereign actors should be deemed state action and thus shielded from the antitrust laws.")(internal citations and quotations omitted). "The resulting asymmetry between a state policy and its implementation can invite private-self dealing." *Id*. at 1112.

Thus, in order to avail itself of state action immunity as a "nonsovereign (sic) actor controlled by active market participants," two requirements must be satisfied: (1) "the challenged restraint ... [must] be one clearly articulated and affirmatively expressed as state policy" and (2) "the policy . . . [must] be actively supervised by the State." *Dental Examiners*, 135 S.Ct. at 1110.

Limitations on state action immunity are critical when the State delegates its regulatory power to active market participants, as "established ethical standards may blend with private anticompetitive motives in a way difficult even for market participants to discern." *Id.* at 1111. Active market participants might include any non-sovereign entity, public or private, or individual decisionmakers that are participants in the market affected by the challenged conduct. *See id.* at 1113-15 (holding "a state board on which a controlling number of decisionmakers are active market participants in the occupation the board regulates must satisfy *Midcal*'s active supervision requirement in order to invoke state-action antitrust immunity"). Notably, active market participants cannot regulate their own markets free from antitrust accountability. *Id.* at 1111.

"Active supervision [by the State] might include 'establish[ing] prices [and] review[ing] the reasonableness of the price schedules,' 'regulat[ing] the terms of fair trade contracts,' 'monitor[ing] market conditions,' and 'engag[ing] in 'pointed reexamination' of the program.'" *Veritext Corp. v. Bonin*, 901 F.3d 287, 292 (5th Cir. 2018) (citing *Midcal*, 445 U.S. at 105–06). Although any inquiry into what constitutes active supervision necessarily turns on the circumstances of a particular case, active supervision must entail "review [of] the substance of the anticompetitive decision, not merely the procedures followed to

11

produce it," and "the power to veto or modify particular decisions to ensure they accord with state policy." *Dental Examiners*, 135 S.Ct. at 1110. Accordingly, the State must actively supervise anticompetitive restraints in order to invoke immunity. *Id*. at 1117 (holding the Sherman Act "does not authorize the States to abandon markets to unsupervised control of active market participants").

Defendants cannot insulate themselves from Sherman Act liability by re-asserting state action immunity. Despite their arguments, the Fifth Circuit held that the CSR Board satisfied the first requirement but failed the second requirement precluding state action immunity. *Veritext Corp.*, 901 F.3d at 292. The Court noted that Article 1434 clearly articulates and affirmatively expresses as state policy that "contracts between private court reporting services and party litigants" are barred. Rec. Doc. 82-1. However, the court further noted that "the Board fails under the second requirement of active state supervision." *Id*. In its assessment of the active state supervision requirement, the Fifth Circuit reasoned:

> To begin with, Louisiana law requires that six of the Board's nine members be "certified shorthand reporter[s]"—the very individuals most likely to be impacted by Veritext's involvement in the market. La. Rev. Stat. § 37:2551(B)(1). The Board attempts to differentiate "freelance" and "official" court reporters, but the boundary between these categories is porous: an individual serving as an official court reporter may readily go freelance if he so chooses. It

is sufficiently clear from the record that the members
of the Board qualify as active market participants. And
it strains credulity to regard the Board's conduct as
strictly public-minded, in light of its decision to
convene a meeting that included "How to increase rates?"
as one of its agenda items.

*Id*. at 293. Accordingly, Six out of nine members of the CSR Board constitute a controlling number of decisionmakers who actively participate in the court reporting profession. *See id.*

In the current motion for partial summary judgment, defendants reassert a nearly identical state action immunity defense and fail to demonstrate that there are no genuine issues of material fact regarding the active supervision requirement. Instead, defendants merely assert legal conclusions that "Article 1434 is outside of the reach of antitrust law and is not preempted by the Sherman Act."[2] Rec. Doc. 141-1 at p. 10. Notably, Defendants did not point to any proof demonstrating that the CSR Board is subject to active supervision that might support judgment as a matter of law. *See* Rec. Doc. 141-1.

The parties clearly dispute whether the CSR Board is subject to active supervision by the State in connection with the CSR Board's enforcement of Article 1434. Rec. Doc. 141-1; Rec. Doc. 159. Thus, whether the CSR Board is actively supervised by the

---

[2] Defendants rely on *First American Title Co. of S.D. v. S.D. Land Title Assoc.* 714 F.2d 1439 (8th Cir. 1983) to support this conclusion. However, the Fifth Circuit concluded that defendants failed to satisfy the state action immunity standard by citing the Supreme Court's decision in *N. Carolina State Bd. of Dental Examiners v. FTC,* 135 S.Ct. 1101, 1111-12 (2015). *Veritext Corp.* 901 F.3d at 292-93.

state or subject to unsupervised control of active market participants presents a genuine issue of material fact and forecloses summary disposition as a matter of law.[3]

For the foregoing reasons,

**IT IS ORDERED** that CSR Defendants' Motion for Partial Summary Judgment (Rec. Doc. 141) is **DENIED.**

New Orleans, Louisiana this 10th day of July, 2020.

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Considering the foregoing determination, we need not address at this time the issue of "illicit" damages.