UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

**VERITEXT CORP., ET Al.**                              **CIVIL ACTION**

**VERSUS**                                              **NO. 16-13903**
                                                        **C/W 17-9877**
                                                        **REF: ALL CASES**

**PAUL A. BONIN, ET AL.**                               **SECTION: "B"(2)**

                              **REASONS**

   This court previously granted plaintiffs' motion for partial summary judgment on the affirmative defenses of unclean hands and allocation of fault, and mooted the affirmative defenses *in pari delicto*, indemnification, and contribution (Rec. Doc. 123) for the following reasons.

   On February 25, 2019, this court consolidated plaintiff Esquire Deposition Solutions, LLC, "Esquire" and plaintiff Veritext Corp.'s actions against defendants Paul A. Bonin, Vincent P. Borrello, Jr., Milton Donegan, Jr., Suzette Magee, Kimya M. Holmes, John H. Anderssen, May F. Dunn, Elizabeth C. Methvin, John J. Lee, Jr., and Laura Putnam. *See* Rec. Doc. 91. Veritext and Esquire are both Delaware corporations providing court-reporting services to clients across the United States, including in Louisiana, in depositions, arbitrations, and other proceedings; both are also consumers of court reporting services in Louisiana. Rec. Docs. 1 at 5, 117 at 5. Plaintiffs' businesses provide negotiated rates and discounts for court reporting services to

1

frequent customers who agree to utilize plaintiffs' services for all or some of their court reporting need. Rec. Doc. 4 at 5.

Defendants are current and former members of the Louisiana Board of Examiners of Certified Shorthand Reporters the "Board"—a regulatory body created "for the purpose of encouraging proficiency in the practice of shorthand reporting as a profession, promoting efficiency in court and general reporting, and … establishing a standard of competency for those persons engaged in it." LA. STAT. ANN. §37:2551(A) (2020). The Board is vested with enforcement authority of the provision under scrutiny in this matter, Louisiana Code of Civil Procedure Article (1434), which prohibits

> …a person who has a contractual relationship with a party litigant to provide shorthand reporting or other court reporting services…[or] a person employed part or full time under contract or otherwise by a person who has a contractual relationship with a party litigant to provide shorthand reporting or other court reporting to services… LA. CODE CIV. PRO. ANN. art. 1434(A)(2) (2020).

In 2012, the Board began enforcing Article 1434 more aggressively, declaring that the law prohibits all contracts between court reporters and party litigants, including volume-based discounts and concessions to frequent customers. Veritext consequently brought a variety of claims under the Constitution—under the dormant Commerce Clause, the Due Process Clause, and the Equal Protection Clause of the Fourteenth Amendment—and under Section 1 of the Sherman Act, 15 U.S.C. § 1.  Rec. Doc. 4. This

2

court dismissed plaintiff's constitutional challenges, and subsequently dismissed the Sherman Act claim on reconsideration. *Veritext Corp. v. Bonin*, 259 F. Supp. 3d 484 (E.D. La. 2017), *on reconsideration*, 2017 WL 3279464 (E.D. La. Aug. 2, 2017). On appeal, the Fifth Circuit confirmed the dismissal of Veritext's constitutional claims but reversed the dismissal of its Sherman Act claim because it found "clear[ly] from the record that the members of the Board qualify as active market participants." *Veritext Corporation v. Bonin*, 901 F.3d 287, 293 (5th Cir. 2018).

On May 5, 2020, defendants filed a motion to compel Veritext to identify all instances in which Veritext provided court reporting services to party litigants from January 1, 2007 to the present after Veritext objected to the interrogatory as overbroad, unduly burdensome, and interposed for the improper purpose of defendants investigating "compliance with the anticompetitive rules and regulations challenged by this lawsuit." Rec. Doc. 215-4 at 85. The Magistrate Judge overruled the objection and granted defendants' motion to compel. Rec. Doc. 228. Plaintiffs then filed the instant motion for partial summary judgment on the affirmative defenses of unclean hands, *in pari delicto*, indemnification, contribution, and allocation of fault.  Rec. Docs. 229, 231, 234.

I. **PARTIES' CONTENTIONS**

Plaintiffs contend that defendants are prohibited from alleging *in pari delicto* and unclean hands as affirmative defenses

3

and that this court would be undermining antitrust laws in allowing them to do so. Rec. Doc. 229-4 at 3-5. Further, plaintiffs argue a hypothetical Article 1434 violation has nothing to do with whether defendants engaged in price fixing or other conduct in violation of the Sherman Act. *Id.* at 5. In fact, in their reply to defendant's opposition, plaintiffs assert defendants failed to submit any evidence showing that plaintiffs' actions harmed them or that plaintiffs would have no cause of action but for their alleged violations of Article 1434. Rec. Doc. 234 at 3.

Plaintiffs also argue that Supreme Court precedent has prohibited defendants from asserting indemnification, contribution, and allocation of fault. *Id.* (citing *Texas Industries v. Radcliff Materials, Inc.*, 451 U.S. 630, 645-47 (1971)). Moreover, plaintiffs are not seeking to hold individual defendants liable for damages if they are sued only in their official capacities. *Id.* at 6.

Defendants do not oppose the dismissal of their affirmative defenses of contribution and indemnity in light of the Supreme Court's decision in *Texas Industries v. Radcliff Materials, Inc.* and contend they never asserted the affirmative defense of *in pari delicto*. Rec. Doc. 231 at 5. However, defendants maintain that their unclean hands defense and defense disputing joint and several liability are legally relevant and should defeat summary judgment.

4

Defendants first argue that if this court grants plaintiffs' injunction, it would "encourage and reward illegal conduct that violates Article 1434" and that this illegal conduct is relevant in determining whether plaintiffs are entitled to injunctive relief. Rec. Doc. 231 at 8.  Defendants claim plaintiffs mischaracterized the holdings in *Perma Life* and *Kiefer-Stewart* and that every other case that plaintiffs cited were either overturned on appeal, were *in pari delicto* defense cases (which is not at issue in this matter) or were inapposite. *Id.* at 9-15.

Finally, defendants argue that summary judgment is inappropriate because there are genuine issues of material fact regarding when, if at all, individual defendants participated in the alleged conspiracy and to what extent they may be held liable. Rec. Doc. 231 at 18. For example, some defendants are sued only in their official capacity, while other defendants served on the Board for only part of the duration plaintiffs' damages allegedly occurred.

## II.  LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

5

(1986) (quoting Fed. R. Civ. P. 56c); *See also* T*IG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). In its motion for summary judgment, plaintiffs do not raise any questions of material facts, but puts at issue whether plaintiffs are entitled to judgment as a matter of law. Defendants assert they did not assert *in pari delicto* as a defense and withdrew their "prophylactic" affirmative defenses of contribution and indemnity; therefore, this court must only analyze the defenses of unclean hands and allocation of fault.

### A. Joint and Several Liability

Rule 12(f) of the Federal Rules of Civil Procedure provides the court with authority to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter" either on its own or on a party's motion. Section 1 of the Sherman Act has broad sweeping language, but the remedial provisions are detailed and specific. *See* 15 U.S.C.A. §15(a). In addition to making violations of section 1 a crime, Congress has expressly authorized a private right of action for treble damages, costs, and reasonable attorney's fees and has not substantially amended these remedies since the Clayton Act was enacted in 1914. *Id.* The Fifth Circuit and the Supreme Court have firmly held that participants in an antitrust conspiracy face joint and several liability for the damages caused by their illegal actions and plaintiffs may recover their entire damages from a single defendant

in a multi-defendant antitrust suit. *See e.g., Wilson P. Abraham Const. Corp. v. Texas Industries, Inc.*, 604 F.2d 897 (5th Cir. 1979) ("[T]he denial of contribution among wrongdoers, together with a plaintiff's right to sue and collect from only one defendant…[does not] offend constitutional principles."); *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) ("[D]efendants should be jointly and severally liable … [it] ensures that the plaintiffs will be able to recover the full amount from some, if not all, participants.").

Defendants argue and plaintiffs agree that in regard to defendants sued in their official capacities only, allocation of fault is irrelevant in this case. Plaintiffs are not seeking to hold these "official" defendants liable for damages. Therefore, there is no issue of allocation of fault to official defendants.

However, defendants argue, but provide no case law or statutory authority to support their contentions, that defendants sued in their individual capacity have "the right to assert that he or she is not jointly and severally liable with the other Individual Defendants until Plaintiffs satisfy their burden of proof that each of the Individual Defendants engaged in conduct violating the Sherman Act." Rec. Doc. 231 at 17. Defendants conflate two issues: whether defendant may assert an affirmative defense and whether plaintiff can meet their burden at trial. Neither of which is dependent on the other. Rule 8(c) requires a

7

party to set forth "any avoidance or affirmative defense" and includes a non-exhaustive list of eighteen affirmative defenses. Fed. R. Civ. Pro. 8(c) (2021). An affirmative defense is a defendant's assertion, if found true, will negate civil liability, even if it is proven that the defendant committed the alleged acts. *Affirmative Defense*, BLACK'S LAW DICTIONARY (9th ed. 2009). The burden to prove an affirmative defense is solely on the party asserting it—the defendants in this case. Plaintiffs must satisfy their burden of proof at trial to determine whether an affirmative defense is even necessary, but that burden is irrelevant to the applicability of specific defenses.

Defendants, again without offering any case law or statutory authority to support their contentions, subsequently muddies the timing individual Board members served on the board with the extent to which they may be held liable. Whether defendants joined the board before or after the alleged conspiracy commenced is irrelevant, defendants may still be liable for all damages flowing from the alleged conspiracy. *See Morton's Mkt., Inc. v. Gustafan's Dairy, Inc.*, 198 F.3d 823, 838 (11th Cir. 1999); *MM Steel, L.P. v. JSW Steel, Inc.*, 806 F.3d 835, 844 (5th Cir. 2015).

To the extent that plaintiffs meet their burden at trial to prove that individual Board members violated antitrust laws and participated in the alleged conspiracy, defendants do not have

8

"the right to assert that he or she is not jointly and severally liable."

### B. Clean Hands Doctrine

Defendants accuse plaintiffs of not citing "a single case where private parties … sought to enjoin an arm of the state … implicat[ing] significant policy considerations," and plaintiffs' unclean hands render summary judgment inappropriate. *Id.* at 8. Likewise, defendants fail to cite a single case or address any public policy considerations. Again, this argument is more appropriate for the merits of plaintiffs' case, and not the applicability of an affirmative defense.

Moreover, defendants are contradictory throughout their response to plaintiff's motion and it is unclear what defendants seek in their opposition to it. Defendants assert that plaintiffs are barred from obtaining injunctive relief, yet they "seek only to limit the quantum of damages that Plaintiffs can recover by excluding revenue that would have been earned in violation of Article 1434." Rec. Doc. 231 at 9-10. Then defendants assert that plaintiffs' unclean hands and wrongful actions do not "completely" bar plaintiffs' suit, and they "seek only to limit the quantum of damages that Plaintiffs can recover … a viable defense under *Perma Life* and *Kestenbaum*," *Id.* at 15, before concluding that the defense is "viable in challenging Plaintiffs' demand to enjoin enforcement of constitutional state law…" *Id.* at 19. Regardless of what

9

defendants purportedly asked this court, plaintiffs "unclean hands" are irrelevant to their claim for injunctive relief and the quantum of recoverable damages.

In their memoranda, both parties argue over what a variety of cases have held with regards to the Clean Hands Doctrine.[1] Because Congress is silent concerning defenses to private antitrust suits, courts are compelled to determine whether common law defenses should be available to defendants. Whether plaintiff's illegal conduct may defeat an injunction or limit recovery of damages continues to perplex courts.

Courts should reject the Clean Hands Doctrine "where Congress [has] authorized[d] broad equitable relief to serve important national purposes." *See McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 357 (1995) (addressing the doctrine in the context of an AEDA claim); *Vichare v. AMBAC Inc.*, 106 F.3d 457, 468 n.5 (2d Cir. 1996) (applying *McKennon's* rationale in a Title VII matter); *Mancuso v. Douglas Elliman LLC*, 808 F. Supp.2d 606, 631

---

[1] Defendants consistently confuse issues and manipulate case law to make unsound arguments that are devoid of any merit. E.g., In defendants' opposition, defendants write "Plaintiffs' illegal conduct, unclean hands, and fault '*can of course be taken into consideration in computing damages*,' as made clear by the Supreme Court in *Perma Life*…Plaintiffs' Motion should be denied to the extent it seeks dismissal of Defendants' Unclean Hands Defense." Rec. Doc. 231 at 19 (citing *Perma Life*, 392 U.S. at 140; *U.S. Football League*, 842 F.2d at 1369, etc.). But in *U.S. Football League*, the court asserts, "Neither *Perma Life* nor *Kiefer-Stewart* suggests that otherwise readily admissible evidence must be excluded because it might be relevant to an *in pari delicto* or unclean-hands defense. In fact, *Perma Life* explicitly states that such evidence "can of course be taken into consideration in computing damages." The court is discussing evidence relevant to causation and damages, not, as defendants imply, to allow them to assert unclean hands as a defense.

(S.D.N.Y. 2011) (finding the doctrine is inapplicable in FHA cases). A review of congressional intent and public policy can help resolve the perplexity in antitrust cases. The underlying policy of antitrust laws is the encouragement of competition. *Standard Oil Co. v. United States*, 221 U.S. 1, 61 (1911) (the purpose of the Sherman Act is to prevent "monopoly and the acts which produce the same result as monopoly"). Courts have recognized that private suits against violators play a vital role in the promotion of competition because they help deter antitrust violations and protect the public interest at large. Moreover, treble damages serve as a deterrence because awards are notoriously larger compared to other civil actions and have exceeded $1 billion dollars in recent history. *See In re Urethane Antitrust Litigation*, 768 F.3d 1245 (10th Cir. 2014) (treble damages totaled $1.2 billion); *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) (treble damages totaled $1.05 billion).

Moreover, the Clean Hands Doctrine is an equitable defense and even though "He who comes into equity must come with clean hands," equity "does not demand that its suitors shall have led blameless lives." *Loughran v. Loughran*, 292 U.S. 216 (1934). Courts "apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). This maxim

"does not mean that courts must always permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law *in the transactions involved*." *Johnston v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944) (emphasis added). The court may employ the doctrine to deny injunctive relief "where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith *related to the matter at issue to the detriment of the other party*." *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1383 (6th Cir. 1995) (emphasis added). But

> [E]ver since the Supreme Court in *Perma Life*, rejected the defense of *in pari delicto*[2] in antitrust cases, it has been clear that whenever some maxim of equity (such as that to get equitable relief you must have "clean hands") collides with the objectives of the antitrust laws, the equity maxim must give way.

*General Leaseways, Inc. v. National Truck Leasing Ass'n*, 744 F.2d 588, 597 (7th Cir. 1984). And in *Kiefer-Stewart*, the plaintiff's alleged unclean hands "could not legalize the unlawful combination by respondents nor immunize them against liability to those they injured." *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S.

---

[2] *In pari delicto* bars plaintiffs from recovering damages when both parties are equally at fault, but the Supreme Court in *Perma Life* held that it "is not to be recognized as a defense to an antitrust action." *Perma Life Mufflers, Inc. v. Intern. Parts Corp.*, 392 U.S. 134, 140 (1968). If plaintiffs have "unclean hands" but are at less-than equal fault, it stands to reason that plaintiffs should not be barred from bringing their antitrust action or recover damages.

211, 214 (1951). Because the policy for enacting antitrust laws is to promote competition and Congress enacted private actions to protect the public from monopolies, defendants' alleged conspiracy outweighs any "unclean hands" the plaintiffs may bring to court.

Further, case law analyzing the Clean Hands Doctrine in antitrust cases, *supra*, scrutinized plaintiffs that also violated *antitrust laws*—not state statutes as the defendants allege in the current matter. Reason dictates that if this court finds that the statute in question violates the Sherman Act, the plaintiffs would not be coming to court with "unclean hands" for any violations of that statute. Therefore, defendants may not assert the Clean Hands Doctrine to bar plaintiffs from seeking injunctive relief or to limit the quantum of damages[3].

New Orleans, Louisiana, this 7th day of April, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] There has been continuous discussion about whether courts have authority to invoke an equitable defense like unclean hands to bar an action for damages since the courts of law and equity merged. But because the plaintiffs would not have "unclean hands" if the court rules in their favor on the merits of this case, that discussion is unnecessary.