## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**VERITEXT CORP., ET AL.**                              **CIVIL ACTION**

**VERSUS**                                                        **NO. 16-13903**
                                                                **C/W 17-9877**
                                                                **REF: ALL CASES**

**PAUL A. BONIN, ET AL.**                              **SECTION "B"(2)**

### ORDER AND REASONS

Before the Court are defendants' motion for reconsideration of this Court's Order and Reasons at Record Document 263 (Rec. Doc. 265), plaintiffs' response in opposition (Rec. Doc. 267), defendants' reply in support of their motion for reconsideration (Rec. Doc. 272), plaintiffs' sur-reply in opposition to defendants' motion for reconsideration (Rec. Doc. 274), and defendants' sur-reply in support of their motion for reconsideration (Rec. Doc. 277).

For the reasons discussed below,

**IT IS ORDERED** that defendants' motion for reconsideration (Rec. Doc. 265) is **DENIED**.

## I.    FACTS AND PROCEDURAL HISTORY

On February 25, 2019, this Court consolidated plaintiff Esquire Deposition Solutions, LLC ("Esquire") and plaintiff Veritext Corporation's actions against defendants John J. Lee,

1

Jr.,[1] Vincent P. Borrello, Jr., Milton Donegan, Jr., Suzette Magee, Kimya M. Holmes, John H. Anderssen, May F. Dunn, Elizabeth C. Methvin, and Laura Putnam. *See* Rec. Doc. 91. Veritext and Esquire are both Delaware corporations providing court-reporting services to clients across the United States, including in Louisiana. Rec. Docs. 1 at 5, 117 at 5. Both companies also consume court reporting services in Louisiana. *Id.* Plaintiffs provide negotiated rates and discounts for court reporting services to frequent customers who agree to utilize plaintiffs' services for all or some of their court reporting needs. Rec. Doc. 117 at 8.

Defendants are current and former members of the Louisiana Board of Examiners of Certified Shorthand Reporters ("Board"), which is a regulatory body created "for the purpose of encouraging proficiency in the practice of shorthand reporting as a profession, promoting efficiency in court and general reporting, and . . . establishing a standard of competency for those persons engaged in it." LA. STAT. ANN. § 37:2551(A) (2021). The Board is authorized to enforce Louisiana Code of Civil Procedure Article 1434, the provision under scrutiny in this matter, which prohibits

> a person who has a contractual relationship with a party litigant to provide shorthand reporting or other court reporting services . . . [or] a person employed part or full time under contract or otherwise by a person who has a contractual relationship with a party litigant to

---

[1] On January 11, 2019, the Court granted plaintiffs' motion to substitute John J. Lee, Jr., in his official capacity as a member of the Louisiana Board of Examiners of Certified Shorthand Reporters, for Paul A. Bonin. Rec. Doc. 89.

> provide shorthand reporting or other court reporting
> services.

LA. CODE CIV. PROC. ANN. art. 1434(A)(2) (2021); *see also* Rec. Doc. 117 at 6, 17.

In 2012, the Board began enforcing Article 1434 against all court reporters who entered into volume-based discount contracts with party litigants. *Id.* at 13. Plaintiffs consequently brought Constitutional claims under the dormant Commerce Clause and the Fourteenth Amendment, as well as a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1.  Rec. Docs. 1, 4. The Court dismissed plaintiffs' constitutional challenges, and subsequently dismissed the Sherman Act claim on reconsideration. *Veritext Corp. v. Bonin*, 259 F. Supp. 3d 484 (E.D. La. 2017), *on reconsideration*, 2017 WL 3279464 (E.D. La. Aug. 2, 2017). On appeal, the Fifth Circuit confirmed the dismissal of Veritext's Constitutional claims but reversed the dismissal of its Sherman Act claim because it found that "Veritext pled facts sufficient to support a finding that the Board's conduct does indeed restrain trade." *Veritext Corp. v. Bonin*, 901 F.3d 287, 292 (5th Cir. 2018). Additionally, the Court held that the Board members were not entitled to *Parker* immunity because the active supervision requirement of that doctrine was "not met." *Id.*; *see also Parker v. Brown*, 317 U.S. 341, 351 (1943).

Plaintiffs then filed a motion for partial summary judgment on the affirmative defenses of unclean hands, *in pari delicto*,

indemnification, contribution, and allocation of fault. Rec. Docs. 229, 231, 234. The Court granted summary judgment for the affirmative defenses of unclean hands and allocation of fault and dismissed as moot the affirmative defenses of *in pari delicto*, indemnification, and contribution. Rec. Docs. 237, 238. Defendants next filed a motion for reconsideration of plaintiffs' motion for summary judgment, which the Court denied on October 22, 2021. Rec. Docs. 240, 242, 246, 262. Shortly after their motion for reconsideration, defendants filed a motion to dismiss for lack of subject matter jurisdiction, which this Court also denied on December 1, 2021. Rec. Docs. 247, 250, 253, 263. Defendants then filed the instant motion for reconsideration. Rec. Doc. 265.

## II.  LAW AND ANALYSIS

### A. Motion for Reconsideration Standard

Federal Rule of Civil Procedure 54(b) provides the district court with "the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Castrillo v. Am. Home Mortg. Servicing, Inc*., No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)). The district court's discretion is broad when determining whether a motion for reconsideration has merit; however, "it is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Id*. (citing 18b

Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 4478.1 (2d ed. 2002)). "The general practice of courts in the Eastern District of Louisiana has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment." *Hoffman v. Bailey*, No. 13-5153, 2015 WL 9315785, at *7 (E.D. La. Dec. 23, 2015).

A Rule 59(e) motion "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Rule 59(e) serves "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Atchafalaya Basinkeeper v. Bostick*, 663 F. App'x 291, 294 (5th Cir. 2016) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Amending a judgment is appropriate under Rule 59(e): "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Berezowsky v. Ojeda*, 652 F. App'x 249, 251 (5th Cir. 2016) (quoting *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012)). Because Rule 59(e) has a "narrow purpose," the Fifth Circuit has observed that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Thus, a motion

for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted." *Ferraro v. Liberty Mut. Ins. Co.*, No. 13-4992, 2014 WL 5324987, at *1 (E.D. La. Oct. 17, 2014).

### B. Whether Plaintiffs Must Allege Article 1434 Itself Violates Federal Law

Defendants initially argue that "when a claim against a state official is based on the enforcement of a statute, *Young* does not apply, unless the statute being enforced is itself unconstitutional or violates federal law." Rec. Doc. 265-1 at 2. Consequently, they assert that "applying *Young* hinges on whether Article 1434 violates federal law."[2] *Id.* The Court finds no support for the assertion that plaintiffs *must* allege that Article 1434

---

[2] Defendants state this Court's previous ruling "was based on the erroneous finding that (according to Plaintiffs' allegations) Article 1434 violates the Sherman Act." Rec. Doc. 265-1 at 5. To clarify, the Court never found that Article 1434 violates the Sherman Act. *See generally* Rec. Doc. 263. All the Order includes is that "plaintiffs claim an ongoing violation of federal law" and that "[plaintiffs] assert that the Board members' enforcement of [Article 1434] violates the Sherman Act." *Id.* at 8. The Order does state that the Fifth Circuit's "affirmation of plaintiffs' Sherman Act claim confirms plaintiffs' right to seek relief for an ongoing violation of that Act." *Id.* at 9. But in doing so, it does not suggest that plaintiffs' Sherman Act claims succeed on the merits, only that plaintiffs "have alleged facts sufficient to make a prima facie Sherman Act claim." *Id.* at 8 (citing *Veritext Corp.*, 901 F.3d at 292).

itself violates federal law for the *Ex parte Young* exception to apply.

"For *Young* to apply, three criteria must be satisfied: (1) A plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as perspective." *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 471 (5th Cir. 2020) (citations omitted). Defendants believe "the second prong was erroneously applied." Rec. Doc. 265-1 at 2. However, Supreme Court and Fifth Circuit case law dictates that as long as plaintiffs allege that the actions of state officials, in their official capacity, violate federal law, that allegation is sufficient for the *Young* exception to apply. *See, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997) ("An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction."); *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."); *Mayfield v. Tex. Dept. of Crim. Just.*, 529 F.3d 599, 604 (5th Cir. 2008) (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)) ("Under *Ex Parte Young*,

a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law."). *Cory v. White*, a case defendants cite, even seems to support this concept when it plainly states "the Eleventh Amendment bars suits against state officers unless they are alleged to be acting contrary to federal law or against the authority of state law." 457 U.S. 85, 91 (1982).

Many cases that include enforcement related injunctive relief do allege that the underlying state statute is unconstitutional or violates federal law, but this type of allegation does not appear to be a requirement. *See, e.g.*, *Am. Bank & Tr. Co. of Opelousas v. Dent.*, 982 F.2d 917, 921 (5th Cir. 1993) (noting that challenging a state law as unconstitutional "is common in *Young* cases," but never stating this type of challenge is required). For example, in *NiGen Biotech, L.L.C. v. Paxton*, the Court found that the *Young* exception applied even though plaintiffs claiming enforcement-related relief never alleged that the underlying state statute violated federal law. *See* 804 F.3d 389, 392, 394-95 (5th Cir. 2015). There, a company called NiGen labeled dietary supplements with the term "hCG." *Id.* at 392. The Attorney General of Texas found the labeling to be misleading according to the Texas Deceptive Trade Practices Act and sent letters to NiGen intimating that formal enforcement was on the horizon if NiGen did not change the labeling. *Id.* NiGen subsequently sought permanent injunctive

relief and a declaration that its labeling did not violate federal law, among other remedies. *Id.* When NiGen filed suit, the Attorney General claimed that NiGen never alleged an ongoing violation of federal law. *Id.* at 394. The court found that "the complaint's straight forward allegations, of which there are many," stating that the Attorney General refuses to justify its threatening letters in violation of the Constitution, are "sufficient to demonstrate the ongoing nature of the alleged unconstitutional conduct which a federal court could remedy through prospective relief." *Id.* at 395. The plaintiffs did not allege that the Texas Deceptive Trade Practices Act, the underlying statute, was unconstitutional, but rather, that the enforcement measures were. *Id.* Nevertheless, the court in *NiGen* still found those allegations sufficient for *Young* to apply. *Id.*

Here, plaintiffs do not allege that Article 1434 is unconstitutional or violates a federal law,[3] but they allege that

---

[3] In their motion for reconsideration, defendants continually state that plaintiffs never allege that Article 1434 violates the Sherman Act; plaintiffs "contend only that Defendants' alleged conduct violated the Sherman Act, not Article 1434 itself." Rec. Doc. 265-1 at 5, 6, 11. This assertion was never in dispute. *See* Rec. Doc. 263 at 8 ("[Plaintiffs] assert that the Board members' enforcement of [Article 1434] violates the Sherman Act."). The Court's previous Order does state that "[i]f a plaintiff alleges a state law violates a federal statute, then the *Ex parte Young* exception still applies." Rec. Doc. 263 at 9. But the Court never stated that plaintiff made this allegation, it was merely speaking generally. Defendants acknowledge that "[t]his Court has previously clarified that its references to Article 1434 violating the Sherman Act 'refer to plaintiffs' allegations that [Defendants] enforcement of Article 1434 violates the Sherman Act.'" Rec. Doc. 265-1 at 11 (quoting Rec. Doc. 262 at 7). They continue: "That clarification was made in a different context . . . and Defendants do not believe the Court intended to apply that same clarification here. Rather, Defendants believe the Court's decision addressed whether Article 1434, as the 'underlying authorization' for Defendants' enforcement actions,

defendants' enforcement measures, such as prohibiting "agreements between court reporters and customers which offer volume-based price discounts," applying Article 1434 to insurance companies who are not a party to a case, and enforcing Article 1434 against court reporters who enter into volume based discounts, violate the Sherman Act. *See* Rec. Doc. 117 at 11, 13, 16-18. As such, plaintiffs seek "[a] permanent injunction against the Board prohibiting enforcement of Louisiana Code of Civil Procedure Article 1434 and 46 La. ADC Pt XXI, § 130 for the purpose of discouraging, eliminating, or prohibiting volume-based price discounts by court reporters." *Id.* at 22. Essentially, when plaintiffs seek an injunction against enforcement of Article 1434 "for the purpose of discouraging, eliminating or prohibiting volume-based price discounts by court reporters," they seek prospective relief from the ongoing violations of federal law that plaintiffs allege throughout their complaint. The *Young* exception requires no more.[4]

It seems logical that in many cases where plaintiffs seek enforcement related relief, plaintiffs also allege that the

---

was alleged to violate the Sherman Act." *Id.* It is unclear why the Court would not "apply the same clarification" across two of its own Orders, especially when both Orders plainly state the same clarification. *See* Rec. Doc. 263 at 8.

[4] Throughout their motion for reconsideration and reply, defendants argue that Article 1434 does not violate the Sherman Act. *See* Rec. Doc. 265-1 at 2-3, 5, 7-10; Rec. Doc. 272 at 8-9. The Court need not address whether Article 1434 violates the Sherman Act as it finds that neither party alleges as so, and plaintiffs need not allege that Article 1434 violates the Sherman Act for *Young* to apply. *See* Rec. Doc. 265-1 at 2; Rec. Doc. 267 at 3.

underlying state statute is unconstitutional. If a plaintiff alleges a state statute itself violates federal law, then it follows that the relief sought would be an injunction prohibiting enforcement of that state statute. *See, e.g.*, *City of Austin v. Paxon*, 943 F.3d 993, 996, 998-99 (5th Cir. 2019) (seeking to prohibit enforcement of a state statute because it violates federal law). However, merely because the term "enforcement" is included in requested relief, does not necessitate the plaintiffs alleging that the underlying state statute they seek relief from is unconstitutional. *See Papasan v. Allain*, 478 U.S. 265, 279 (1986) ("In discerning on which side of the line a particular case falls, we look to the substance rather than to the form of the relief sought.").

Still, defendants rely on *Worcester County Trust Co. v. Riley*, 302 U.S. 292, 299 (1937), *Cory v. White*, 457 U.S. 85, 91 (1982), and *Papasan v. Allain*, 478 U.S. 265, 277 (1986) to argue that plaintiffs' allegations are not sufficient to prompt application of the *Ex parte Young* exception. *Id.* The three cases cited, nevertheless, do not clearly illustrate that the state statute itself needs to explicitly violate federal law for *Young* to apply.

In *Worcester County Trust*, the Court found that "the threatened action of respondents" did not involve "any breach of state law or of the laws or Constitution of the United States," and thus, the *Young* exception was inapplicable. 302 U.S. at 299.

However, the Court did not foreclose the possibility that threatened action *could* violate the laws of the United States, and therefore, warrant application of the *Young* exception. *Id.* at 298. In fact, it specifically contemplates this possibility. *See id.* (suggesting that if petitioner asserted that courts in California or Massachusetts threatened to hold that their laws taxing inheritances apply to intangibles of those domiciled in other states, an action that would violate federal law, then that type of action could be "within the reach of the federal judicial power").

    *Cory* also does not support defendants' proposition. *Cory* did decline to overrule *Worcester County Trust*, as defendants note, but does not suggest that a state law itself must violate federal laws for the *Young* exception to apply. *See* 457 U.S. at 91. Indeed, *Cory* states that *Worcester County Trust*'s main holding is that "generally, suits to restrain action of state officials can, consistently with the constitutional prohibition, be prosecuted only when the action sought to be restrained is without the authority of state law or contravenes the statutes or Constitution of the United States." *Id.* at 89. *Cory* then affirms that "the Eleventh Amendment bars suits against state officers unless they are alleged to be acting contrary to federal law or against the authority of state law." *Id.* at 91. No aspect of this language

seems to suggest that a *state law*, as written, must specifically violate federal law for the *Young* exception to apply.

In *Papasan v. Allain*, the Court states, "*Young* applies only where the underlying authorization upon which the named official acts is asserted to be illegal." *Papasan*, 478 U.S. at 277. Defendants insist this clause means a state statute must be alleged to be illegal for *Young* to apply, but it could mean that any authority, such as a guideline, directive, or order, that an official uses to act in violation of federal law must be "asserted to be illegal." *See id.* Indeed, this interpretation would seem to explain *NiGen Biotech, L.L.C. v. Paxton*, as well as *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, a Supreme Court case more recent than *Papasan*. *See* 804 F.3d 389, 392, 394-95 (5th Cir. 2015); 535 U.S. 635, 645-46 (2002).

In *Verizon*, plaintiff filed a complaint against the Maryland Public Service Commission ("Commission") for issuing an order that plaintiff claimed violated federal law. 535 U.S. at 640. The Court did not find that any underlying state statute violated federal law. *See id.* at 645-46. Plaintiff's allegations that the Commission's action, through its order, violated federal law were sufficient for the *Young* exception to apply. *Id.* The Court even added that "*Ex parte Young* itself was a suit against state officials . . . to enjoin enforcement of a railroad commission's order requiring a reduction in rates." *Id.* at 646. Indeed, the

plaintiff's claim in *Verizon* was not based on enforcement of a statute, it was based on an order, but *Papasan*'s statement that "*Young* applies only where the underlying authorization upon which the named official acts is asserted to be illegal" makes no distinction between claims based on enforcement of a statute or enforcement of an order. *See* 478 U.S. at 277. Consequently, the Court finds that it did not err in finding that plaintiffs alleged an ongoing violation of federal law, and that plaintiffs satisfied the second prong of the *Young* criteria. *See Green Valley*, 969 F.3d at 471.

**C. Prospective Relief**

"[A] litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams on behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). Defendants claim that plaintiffs' requested relief against defendants in their official capacity do not redress an ongoing violation of federal law. They state, "how would enjoining enforcement of Article 1434 prevent an ongoing violation of federal law as required for *Young*? The answer: **it would not.**" Rec. Doc. 272 at 1. In doing so, defendants seem to revive an argument from their original motion to dismiss. *See* Rec. Doc. 247-1 at 2. There, they claimed plaintiffs cannot avoid "Eleventh Amendment immunity by 'qualifying' their injunctive relief to enforcement taken 'for the purpose of' attacking alleged

volume-based discounts." *Id.* Defendants argue that "the Eleventh Amendment protects the enforcement of a constitutional state statute—as written—regardless of any alleged illicit 'purpose.'" *Id.; see also* Rec. Doc. 272 at 4 n.5 ("It does not matter that Plaintiffs 'limit' their requested injunction to enforcement actions taken when so-called 'volume-based price discounts' are involved.").

In making these arguments, defendants seem to believe that there is no difference between seeking an injunction against enforcement of Article 1434 and an injunction against enforcement of Article 1434 "for the purpose of discouraging, eliminating, or prohibiting volume-based discounts." *See* Rec. Doc. 117 at 22. We, however, see a distinction, and find that plaintiffs do seek "prospective relief to redress an ongoing violation of federal law."[5] *See Air Evac EMS, Inc. v. Tex. Dep't Ins., Div. of Workers Comp.,* 851 F.3d 507, 520 (5th Cir. 2017) ("As with most jurisdictional questions, *Ex Parte Young* and standing turn on the specific details in the complaint.").

Plaintiffs generally allege that the Board's interpretation and enforcement of Article 1434 violates the Sherman Act. *See* Rec. Doc. 117 at 10-13, 21-22. Specifically, plaintiffs claim the Board

---

[5] Defendants seem to even recognize a possibility of this distinction as they omit "for the purpose of discouraging, eliminating, or prohibiting volume-based price discounts by court reporters" every time they quote plaintiff's prayer for relief. *See* Rec. Doc. 272 at 1-4, 7.

has declared that it prohibits agreements between court reporters and customers which offer volume-based price discounts or service concessions to frequent customers. *Id.* at 11. They allege the Board has also interpreted the statute to extend to assignments paid for by insurance companies on behalf of their insureds, even if the insurance company is not party to the suit. *Id.* Plaintiffs also claim that to enforce its directives, the Board in several instances issued "broad and burdensome subpoenas to insurance companies for the express purpose of disrupting the commercial relationships between insurance companies and national court reporting firms like Veritext." *Id.* at 16. According to plaintiffs, to be released from the subpoena, the Board demanded that these insurance companies publicly declare that they did not have exclusive contracts with court reporting firms like Veritext. *Id.* Additionally, plaintiffs alleged the Board hired attorneys to investigate court reporters and opened formal investigations. *Id.* at 16-17. Allegedly, the Board also sent Veritext a Notice of Investigation and a Rule to Show Cause. *Id.* at 17-18. "Although the Board ultimately continued the show cause hearing without date, Veritext, Esquire, and other national court reporting firms . . . remain in jeopardy of prosecution." *Id.* at 18. To address these alleged ongoing violations of federal law, plaintiffs seek "[a] permanent injunction against the Board prohibiting enforcement of Louisiana Code of Civil Procedure Article 1434 and 46 La. ADC Pt

XXI, § 130 for the purpose of discouraging, eliminating, or prohibiting volume-based price discounts by court reporters." *Id.* at 22.

If plaintiffs had simply sought an injunction against Article 1434 enforcement without a qualifier, then we might agree with defendants that plaintiffs' prospective relief would not redress an ongoing violation of federal law. As neither party claims Article 1434 violates the Sherman Act or is otherwise unconstitutional, then asking to fully prohibit enforcement of Article 1434 would be too expansive. *See* Rec. Doc. 267 at 3; Rec. Doc. 265-1 at 2. Nevertheless, plaintiffs do seek an injunction on the enforcement of Article 1434 "for the purpose of discouraging, eliminating, or prohibiting volume-based discounts." *See* Rec. Doc. 117 at 22. Meaning, they seek relief from the practices that plaintiffs throughout their complaint allege violate the Sherman Act. *See id.* at 11, 13, 16-18; Rec. Doc. 168-2 at 3. Consequently, plaintiffs' prospective relief does redress an alleged ongoing violation of federal law. *See Papasan*, 478 U.S. at 279 ("In discerning on which side of the line a particular case falls, we look to the substance rather than to the form of the relief sought.").

However, defendants maintain that since "Article 1434, *as written*, does not violate federal law," then "the enforcement of Article 1434 *as written* . . . does not violate federal law," and

consequently, the *Young* exception does not apply. Rec. Doc. 272 at
5. Article 1434 may not violate federal law as written, however,
that does not preclude the Board from enforcing Article 1434 in a
manner that does violate federal law. Indeed, plaintiffs do allege
that defendants may not be enforcing Article 1434 as written, and
that these errors in enforcement violate federal law. *See* Rec.
Doc. 117 at 11, 13, 16-18, 21-22. In plaintiffs' complaint, they
state:

> the statute lacks any definition of "contract" or other
> standards to distinguish between lawful and unlawful
> contracts. It provides no guidance about which of the
> following alternatives is correct: (1) the statute
> prohibits all agreements between court reporters and
> party litigants; (2) the statute requires party
> litigants to engage court reporters through their
> attorneys; (3) the statute permits an agreement for a
> single engagement but prohibits long-term agreements;
> (4) the statute prohibits court reporters from offering
> volume-based price discounts or service concessions to
> frequent customers; (5) the statute prohibits referrals
> from court reporting firms; or (6) the statute prohibits
> a combination of the above or something else entirely.

Rec. Doc. 117 at 11. Plaintiffs allege that interpreting and
enforcing Article 1434 as a statute that "prohibits court reporters
from offering volume-based price discounts or service concessions
to frequent customers" is an interpretation of the statute that
violates the Sherman Act. *Id.* Consequently, defendants may believe
they are plainly enforcing Article 1434 as written, but plaintiffs
allege they are not. *Id.* At this stage, the Court need not decide
whether defendants' actions actually violate the Sherman Act. In

deciding whether to grant the *Young* exception, the Court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645. We, thus, find that plaintiffs' allegations are sufficient for the *Young* exception to apply.

Finally, in defendants' original motion to dismiss, they add that "Plaintiffs' requested injunctive relief could not even be ordered because, as a practical matter, it would require the courts to divine the 'purpose' behind the enforcement of Article 1434 and lead to violations of the *Younger* doctrine." Rec. Doc. 247-1 at 2. Plaintiffs requested relief may be imprecise, but again, whether the Court practically can or should grant plaintiffs' requested relief is not an appropriate inquiry for the *Young* exception. *See Verizon*, 535 U.S. at 645; *Air Evac*, 851 F.3d at 520 (acknowledging that *Ex parte Young* poses a "threshold jurisdictional question" and declining to "consider the availability and scope of any eventual relief"); *Texas Democratic Party v. Abbott*, 978 F.3d 168, 180 (5th Cir. 2020) (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)) ("It is permissible under *Ex parte Young* for a court to 'command[] a state official to do nothing more than refrain from violating federal law.'"). A Court need only determine that plaintiff sued state officials in their official capacity, alleged an ongoing violation of federal law,

and sought prospective relief. *Green Valley*, 969 F.3d at 471. Plaintiffs' allegations are sufficient to meet this standard.[6]

### C.   Plaintiffs' Allegations Regarding the Board's Implementation of Rules and Regulations

In their reply, defendants argue that "plaintiffs falsely suggest that their claims against Defendants *in their official-capacities* rest on allegations that Defendants 'implement[ed] rules and regulations to increase the rates for court reporting services in Louisiana and to discourage Plaintiffs and other court reporting firms from competing in Louisiana.'" Rec. Doc. 272 at 5 (quoting Rec. Doc. 267 at 2-3). Thus, defendants contend that plaintiffs cannot assert that "the ongoing 'enforcement' of *any* rule or regulation has and will continue to violate the Sherman Act in the future." *Id.* at 6. Whether or not plaintiffs mischaracterized their allegations, they do not need to allege that a rule or regulation violates federal law for the *Young* exception to apply, and thus, plaintiffs satisfy all *Young* criteria.

---

[6] In their sur-reply, plaintiffs suggest that they properly allege prospective relief redressing ongoing violations of federal law because their prayer for relief expressly asks for "such further relief, in law and equity, as the Court may deem just and proper." Rec. Doc. 274 at 1-2. Defendants assert that "Plaintiffs are effectively asking this Court for permission to amend their Complaints by broadening their requested official-capacity injunction to undefined and undeterminable lengths." Rec. Doc. 277 at 2. The Court need not address plaintiffs' argument, nor defendants' response, as it finds plaintiffs' request for an injunction prohibiting the Board's enforcement of Article 1434 for the purpose of discouraging, prohibiting, or limiting volume-based discounts is prospective relief redressing an ongoing violation of federal law. *See* Rec. Doc. 117 at 22.

In their complaint, plaintiffs allege that the Board has "advised" all court reporters that should they work for one of these "national" firms, which engage in volume-based discounts, then they might be in violation of Article 1434. *See* Rec. Doc. 168-2 at 3. This directive is similar to the order in *Verizon* that the plaintiffs alleged was an ongoing violation of federal law. In *Verizon*, the Court found that plaintiffs' prayer "that state officials be restrained from enforcing an order in contravention of controlling federal law" was prospective relief redressing an ongoing violation of federal law. *Verizon*, 535 U.S. at 645. Similar to *Verizon*, plaintiffs here seek an injunction prohibiting enforcement of Article 1434 "for the purpose of discouraging, eliminating, or prohibiting volume-based discount"—or in other words, plaintiffs seek an injunction against the ongoing violations of federal law alleged throughout their complaint. *See* Rec. Doc. 117 at 10-11, 21-22. Thus, whether or not plaintiffs specifically allege that defendants "violated the Sherman Act in their official capacities by implementing, promulgating, or enforcing any rules or regulations," the Court finds that plaintiffs allege state officials' actions present an ongoing violation of federal law, and consequently, the *Young* exception still applies. *See* Rec. Doc. 272 at 5.

New Orleans, Louisiana this 27th day of May, 2022

_____

SENIOR UNITED STATES DISTRICT JUDGE